# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant CRAIG A. LEBLANC
### United States Air Force

## ACM 38396

## ____M.J.____

## 26 March 2015

Sentence adjudged 14 February 2013 by GCM convened at Joint Base San Antonio – Lackland, Texas. Military Judge: Donald R. Eller, Jr. (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 30 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James, Major Isaac C. Kennen, and Major Thomas A. Smith.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith, Major Mary Ellen Payne, Captain Collin F. Delaney, and Gerald R. Bruce, Esquire.

EN BANC

ALLRED, HECKER, MITCHELL, WEBER, TELLER, and CONTOVEROS
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

TELLER, J., delivered the opinion of the court, in which ALLRED, C.J., HECKER, S.J., and WEBER, J., join. MITCHELL, S.J., with whom CONTOVEROS, J., joins, filed an opinion concurring in part and dissenting in part.

TELLER, Judge:

The appellant was convicted, pursuant to mixed pleas, by a military judge sitting alone, of being absent without leave, failing to obey a lawful general regulation, failing to

obey a lawful order, dereliction of duty, making a false official statement, adultery, and obstructing justice in violation of Articles 86, 92, 107 and 134, UCMJ, 10 U.S.C. §§ 886, 892, 907, 934. The court sentenced him to a dishonorable discharge, confinement for 30 months, and reduction to E-1. The convening authority approved the sentence as adjudged.

The appellant argues: (1) his plea of guilty to Charge I, Specification 1, was improvident because the regulatory provision in question was not punitive; (2) that the finding of guilt as to the Second Additional Charge, Specification 1, was legally insufficient because the regulatory provision in question was not punitive; (3) that his sentence was inappropriately severe; and (4) that he is entitled to a new action because of errors in the staff judge advocate's recommendation. We disagree and affirm.

*Background*

In November 2011, information came to light indicating the appellant, while serving as a basic military training (BMT) military training instructor (MTI), had sexual contact with a BMT trainee. Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships*, (2 March 2007) (certified current 26 September 2011), prohibited MTIs from developing or conducting a personal, intimate or sexual relationship with a trainee.[1] The prohibition included both BMT trainees and BMT graduates who had gone on to technical training.

This information led to an investigation that confirmed the initial allegations. In October 2012, the appellant and a fellow MTI, Airman Basic (AB), then-Staff Sergeant, Kwinton Estacio, convinced two BMT trainees to meet them in a physical training (PT) supply room. The two trainees had graduated from BMT earlier that week and were scheduled to leave within the next few hours for further training. The appellant had sex with one of the trainees[2] while AB Estacio engaged in sexual relations with the other. The appellant bragged about the encounter to another trainee and some fellow MTIs.

To protect the ensuing investigation, the appellant was ordered not to contact AB Estacio or a third suspect. The appellant violated that order by meeting with them in person at his residence. In a further attempt to hinder the investigation, the appellant

---

[1] Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships*, (2 March 2007) (certified current 26 September 2011), has been substantially revised and is now entitled *Recruiting, Education, and Training Standards of Conduct*. The new instruction incorporates the prior prohibitions on unprofessional relationships in addition to other standards of conduct addressing matters such as hazing and academic integrity.

[2] The appellant was found not guilty of aggravated sexual assault by placing the trainee in fear of harm to her career through the abuse of his position as a military training instructor. He pled guilty to violating AETCI 36-2909 by wrongfully seeking to develop and conduct an improper relationship with her by engaging in sexual intercourse with her, sending her text and photo messages, and calling her.

contacted the trainee he had sex with and told her not to tell anyone about it and to delete any text messages or pictures they had exchanged.

During the investigation, other misconduct also came to light. Investigators discovered the appellant had violated training standards by forcing trainees to eat cookies while performing PT after one of the trainees received the cookies in an unauthorized package from home. This caused one of the trainees to vomit. Investigators also discovered the appellant had sex with an Airman from the National Guard while he was still married.

While awaiting disposition of charges related to the prohibited relationship, the appellant engaged in further misconduct. After a civil arrest for public intoxication, he failed to report for duty and blamed his failure on a family emergency, an assertion he knew to be false. He also continued to contact the National Guard Airman with whom he committed adultery despite two separate no-contact orders. He also met a technical training student at a downtown bar, and in violation of an order not to talk to trainees, attempted to develop a personal relationship with her.[3] He even flaunted his misconduct, asking her what she would do if he was one of the "bad apples" she had seen on the news, and telling her he had sex with one of his trainees. In the pretrial confinement hearing that followed the discovery of that incident, the appellant lied again, saying he didn't know she was a trainee.

*Charges Brought Under AETCI 36-2909*

For his conduct with the trainee in October 2012, the appellant pled guilty to violating Paragraph 4.3.3 of AETCI 36-2909, which states, in pertinent part:

> Faculty and staff will . . . not establish, develop, attempt to develop, or conduct a personal, intimate, or sexual relationship with a trainee, cadet, [or] student. This includes, but is not limited to, dating, handholding, kissing, embracing, caressing, and engaging in sexual activities. Prohibited personal, intimate, or sexual relationships include unprofessional relationships conducted in person and/or via cards, letters, e-mails.

For his conduct with the student he met at a downtown bar, the appellant was convicted, contrary to his pleas, of violating Paragraph 4.3.10 of AETCI 36-2909, which stated "faculty and staff will . . . not develop, attempt to develop, establish, or carry on a personal social relationship with a trainee, cadet, or student."

---

[3] After a litigated trial, the appellant was found guilty of violating AETCI 36-2909 for this misconduct.

The appellant now contends these paragraphs of AETCI 36-2909 are not punitive under Article 92(1) as it is not a lawful general regulation due to its noncompliance with an instruction issued by a superior authority. On that basis, the appellant argues that his guilty plea to Charge I, Specification 1 is improvident, and his conviction as to the Second Additional Charge, Specification 1 was legally insufficient.

Pure questions of law arising from a guilty plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). Rejection of a guilty plea requires that the record show a substantial basis for questioning the providence of the plea. *Id.*; *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

We review issues of legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83,94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R.1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

*Enforceability of Charged Provisions of AETCI 36-2909*

a. *Requirements for Punitive Regulations*

Under both standards of review, we must first determine whether violations of the applicable provisions of AETCI 36-2909 may be punished under Article 92(1), UCMJ. "[I]f a regulation does not contain language establishing that it is a punitive regulation, a violation of the regulation is not a criminal offense under Article 92(1)." *United States v. Shavrnoch*, 49 M.J. 334, 336 (C.A.A.F. 1998). Generally, the punitive nature of a regulation is ascertained by examining the regulation as a whole to see if it "regulate[s] conduct of individual members and that its direct application of sanctions for its violation is self-evident." *United States v. Blanchard*, 19 M.J. 196, 197 (C.M.A. 1985) (citations omitted).

Under that test, we find AETCI 36-2909 to be enforceable. The introductory section of the Instruction directs that "[m]ilitary members who violate a prohibition in Paragraph 4, (or any subparagraph thereunder) of this instruction . . . are subject to prosecution under Article 92 of the [UCMJ.]" Paragraph 4, which comprises four of the nine pages of the Instruction, begins with the phrase "Specific Prohibitions and

Responsibilities." The following subparagraphs set out specific behavioral expectations for four specific classes of personnel: faculty and staff; trainees, cadets and students; recruiters; and Airmen participating in the Recruiter Assistance Program. In an unpublished opinion, this court previously affirmed the general punitive nature of a prior version of AETCI 36-2909 that set out similar prohibitions. *See United States v. Crawford*, ACM 34837 (A.F. Ct. Crim. App. 23 December 2002) (unpub. op.) (finding the operative paragraphs punitive, but not applicable to the appellant).

b. *Air Force-Specific Regulatory Requirements for Punitive Instructions*

The appellant's assignment of error, however, points out that the Secretary of the Air Force has issued an instruction that includes more specific requirements for punitive Air Force instructions. Air Force Instruction (AFI) 33-360, *Publications and Forms Management*, (18 May 2006) (incorporating changes through 12 July 2007), was in force at the time AETCI 36-2909 was published and at the time of the alleged offense. AFI 33-360 states, "compliance with this publication is mandatory." It governs the drafting of Air Force Instructions and contains specific guidance on drafting punitive provisions.[4]

In a section entitled "Specific Legal Requirements," describing the requirements for a punitive regulation, AFI 33-360 states, in pertinent part:

> 2.17.1.2. Structure of a Punitive Publication. Generally, for a publication to be punitive, it must place obligations on individuals. The opening paragraph must specify which parts of the publication contain punitive provisions; a service member should be able to tell by looking in the introduction of the publication that it contains punitive provisions. Publications containing punitive provisions often provide nonpunitive information. Authors must, therefore, identify clearly those portions that are punitive in nature, or place punitive provisions in a separate publication.
>
> 2.17.1.3. Specifying Punitive Portions in the Opening Paragraph. The opening paragraph must clearly specify which parts of a publication contain mandatory provisions and prohibitions enforceable against the individual. While such language standing alone in the opening paragraph does

---

[4] In its introductory paragraph, Air Force Instruction (AFI) 33-360, *Publications and Forms Management*, (18 May 2006) (incorporating changes through 12 July 2007) states, "This publication . . . provides guidance and procedures on creating, managing, and disseminating directive and nondirective publications and forms throughout the Air Force. It applies to individuals at all levels who prepare, manage, review, certify, approve, disseminate and/or use official Air Force publications and forms . . . ."

not make a publication punitive, it becomes punitive when combined with punitive language in the body of the publication . . . . The opening paragraph must say that failure to observe the prohibitions and mandatory provisions in the publication is a violation of Article 92 of the UCMJ, or that noncompliance may result in punishment under Article 92 of the UCMJ.

2.17.1.4. Punitive Language. Most of the recommended language used in publications does not readily put the reader on notice that the publication is punitive in nature. Use language that expresses the mandatory nature of the provisions, such as "will," "will not," "shall," "shall not," "must," "must not," etc. Paragraphs containing mandatory provisions or prohibitions must state that a failure to obey is a violation of Article 92 of the UCMJ. This statement should accompany each mandatory provision or prohibition, or may, if clear, refer to a series of mandatory provisions or prohibitions listed within a specific paragraph.

Here, AETCI 36-2909's opening paragraph *does* clearly specify which parts of the instruction contain mandatory provisions and prohibitions enforceable against the individual. It specifically states that military members who violate the prohibitions in Paragraph 4 or its subparagraphs are subject to prosecution under Article 92, UCMJ. The appellant was charged with violating two subparagraphs of Paragraph 4.

The charged paragraphs and subparagraphs of AETCI 36-2909, however, do not each state that a failure to obey those paragraphs is a violation of Article 92 of the UCMJ, as required by Paragraph 2.17.1.4 of AFI 33-360. The appellant contends that, without this language, the punitive language in the opening paragraph of AETCI 36-2909 is insufficient to make a violation of the paragraphs or subparagraphs chargeable under Article 92(1), UCMJ.

Accordingly, we interpret the appellant's claim as going beyond the more general common law test for punitive regulations and invoking what is often referred to as the *Accardi* doctrine. *See generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Not all regulations are designed to create rights that may be enforced by an accused in an action under the UCMJ, but "[i]t is well-settled that a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests." *United States v. Russo*, 1 M.J. 134, 135 (C.M.A. 1975) (citing *Am Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532 (1970); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). The *Accardi* doctrine confers standing upon a criminal defendant to challenge an

agency's failure to follow its own regulations when the regulation was intended to protect individual liberty or personal interests.

   c. *Applicability of the Accardi Doctrine to AFI 33-360*

   In *United States v. McGraner*, 13 M.J. 408, 417–18 (C.M.A. 1982), the Court of Military Appeals applied four factors in determining whether a regulation was intended to protect personal liberties or interests. Specifically, in considering whether evidence should be excluded due to regulatory violations, the court considered (1) the presence or absence of a specific remedy in the regulation, (2) the primary purpose of the provision in question, (3) the scope of the remedy necessary to protect the purported interest, and (4) the presence or absence of any due process considerations discussed by the Supreme Court in *United States v. Caceres*, 440 U.S. 741 (1979). *Id.*; *see also United States v. Manuel*, 43 M.J. 282, 287 (C.A.A.F. 1995) (upholding military judge's exclusion of evidence where it was obtained contrary to the provisions of a regulation intended to confer a right on servicemembers); *United States v. Foust*, 17 M.J. 85, 87–88 (C.M.A. 1983) (refusing to invoke an exclusionary rule when it was unclear that the military regulation on which the defense relied was intended to create a right personal to the accused); *United States v. Kohut*, 44 M.J. 245, 250 (C.M.A. 1996) (finding violation of a directive establishing a policy as to when prosecution of an accused should take place does not constitute a bar to trial when the directive was not issued to protect rights of servicemembers).

   We find this test to also be applicable in determining whether the Government's failure to comply with AFI 33-360 prevents the Government from charging the appellant with a violation of Article 92(1), UCMJ.

   1. Absence of a specific remedy in AFI 33-360

   The first factor suggests that AFI 33-360 was not intended to protect personal liberties or interests. The instruction itself, and Paragraph 2.17, does not provide any remedy for individuals if agency officials do not comply with its terms. For example, contrast Paragraph 2.17 with the provision at issue in *United States v. Dunks*, 1 M.J. 254, (C.M.A. 1976). There, United States Army Europe Supplement 1 to Army Regulation 27-10 (16 September 1971) allowed soldiers pending summary or special court-martial for more than 45 days from the earlier of preferral or the imposition of pretrial restraint to petition the general court-martial convening authority for a dismissal of charges. *Id.* The specific relief—the petition for dismissal—suggested that the purpose of the provision was the protection of the individual rather than an institutional concern for prompt resolution of charges.

   Paragraph 2.17 has no similar avenue for relief. Instead, the language as a whole suggests the purpose of that section of the instruction is to provide guidance to officials

intending to draft punitive provisions to aid them in meeting legal requirements for enforcement.

## 2. Primary purpose of AFI 33-360

The dissenting opinion argues the primary purpose of AFI 33-360, Paragraph 2.17, is to provide unambiguous notice to Airmen of provisions that are subject to punishment under Article 92(1), UCMJ. Paragraph 2.17 includes several references that support that notion. *See* AFI 33-360, ¶ 2.17.1.2 ("A service member should be able to tell by looking in the introduction of the publication that it contains punitive provisions."); ¶ 2.17.1.3 (stating any publication that imposes punitive liability must "clearly specify" in the opening paragraph which parts of the publication contain mandatory provisions enforceable against the individual.); ¶ 2.17.1.4 (noting most of the language used in publications "does not readily put the reader on notice that the publication is punitive in nature").

We find the notice argument unconvincing as it applies to the specific provision at issue in this case. The appellant cites that part of Paragraph 2.17.1.4 which requires each paragraph containing mandatory provisions to state a failure to obey is a violation of Article 92, UCMJ. With respect to providing notice of proscribed conduct, the requirement that boilerplate warnings appear with each provision or in each paragraph would likely detract from a layperson's ability to know and understand what conduct is expected of them. Such rote and redundant repetition would make the regulation more difficult for the average reader to use, obscuring any plain statement of prohibited conduct in a sea of legal jargon.

Furthermore, other provisions of AFI 33-360 already set effective standards for discriminating between language that establishes a code of conduct and more general guidance. Paragraph 2.17.1.3, for example, requires any publication that imposes punitive liability to "clearly specify" in the opening paragraph—a consistent, easy to find location—which parts of the publication contain mandatory provisions and prohibitions enforceable against the individual. AETCI 36-2909's opening paragraph follows this requirement and expressly states that violations of Paragraph 4 subject military members to prosecution under Article 92, UCMJ. This language has been held sufficient to support an Article 92(1), UCMJ charge for violating a related AETCI. *See United States v. Pope*, 63 M.J. 68, 72 (C.A.A.F. 2006) (upholding an Article 92(1), UCMJ conviction for violating the primary AETCI used to provide guidance to recruiters and outlining prohibited conduct which expressly stated that failure to observe the mandatory provisions may result in prosecution under Article 92, UCMJ).

Additionally, Paragraph 2.17.1.4, immediately prior to the provision cited by the appellant, requires drafters to "[u]se language that expresses the mandatory nature of the provisions, such as 'will,' 'will not,' 'shall,' 'shall not,' 'must,' 'must not,' etc." These

provisions accord with case law and could convincingly be argued to enhance the ability of Airmen to understand what conduct is expected of them, and Paragraph 4 of the AFI uses that language.

The point of this analysis is not for this court to pass judgment on the advisability of any particular provision in AFI 33-360. The point is to examine whether the provision was likely intended to protect one specific personal interest—notice—such that an instruction's failure to comply makes that instruction unenforceable under Article 92, UCMJ. After considering the probable impact of the provision cited here on the useful functioning of instructions such as AETCI 36-2909, we find no basis to conclude that enhancing notice was the intended purpose of that provision.

### 3. The scope of the remedy necessary to protect the purported interest

Proceeding to the third *McGraner* factor, we find that the consequences of enforcing the requirements of AFI 33-360 would be disproportionate to any personal interest that provision seeks to protect. As the appellant noted in his brief, our superior court's precedent suggesting that a court could find an accused guilty of the lesser-included offense of willful dereliction of duty under Article 92(3), s*ee Shavrnoch*, 49 M.J. at 339; *United States v Bivins*, 49 M.J. 328, 332 (C.A.A.F. 1998), may not have survived our superior court's holding in *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010). If not, then the only relief available to the trial court would have been to dismiss the specification, a remedy the *McGraner* court described as drastic. Even if dereliction of duty remains a lesser included offense, our superior court observed in *Shavrnoch* that the difference between the offense of violating a general regulation under Article 92(1) and the offense of dereliction of duty under Article 92(3) is not a "mere technical distinction." *Shavrnoch*, 49 M.J. at 337. The court noted the substantial difference between the maximum punishments for the two offenses. *Id.* So, like *McGraner*, the consequences of enforcing the language of the regulation cited by the appellant would be substantial and weigh against conferring standing on the appellant.

### 4. The presence or absence of any due process considerations

Finally, under the fourth *McGraner* factor, we find no due process concerns that suggest that the appellant should have standing to enforce Paragraph 2.17.1.4. In *Caceres*, the Supreme Court overturned the lower court's exclusion of conversations which an Internal Revenue Service (IRS) agent had recorded without the supervisory authorization required under IRS regulations. *Caceres*, 440 U.S. at 743–44. The Court specifically considered three factors: whether the regulation was mandated by the Constitution or federal law, whether the individual had reasonably and detrimentally relied on agency regulations promulgated for his guidance or benefit, and whether the Administrative Procedure Act would provide grounds for judicial enforcement of the regulation. *Id.*, at 752–54.

None of the due process concerns examined by the Court are implicated in this case. The Air Force is not required by the Constitution or statute to include punitive language with each punitive provision of a regulation. There is also no evidence that the appellant relied upon the absence of specific language in Chapter Four of AETCI 36-2909 in deciding whether personal relationships with trainees was permissible. On the contrary, the appellant admitted during the providence inquiry that he believed he was subject to the restrictions in Chapter Four. Finally, this is not a case where the appellant seeks to invalidate the publication of AETCI 36-2909 because its publication was arbitrary, capricious, an abuse of discretion, or not in accordance with law. While its publication, like the recording in *Caceres*, was deficient in certain respects, it was not arbitrary or capricious.

The dissent argues that treating AETCI 36-2909 as punitive despite its noncompliance construes AFI 33-360 to read "should" when it plainly says "must." We disagree. Drafters of punitive instructions must abide by the requirements of AFI 33-360. The appellant in this case argues that they failed to do so. Where we part company with the dissent is not in whether the drafters may be held to account for any such failure, but whether the appellant has standing to use that failure to excuse his willful violation of a provision of which, by his own admission, he was completely aware and which he believed he had a duty to obey.

Accordingly, we find that although AETCI 36-2909 did not meet all requirements of AFI 33-360, the cited provisions were not intended to protect personal liberties or interests, and the appellant lacks standing to enforce them. Any challenge to the providence of his pleas or the legal sufficiency of his conviction on that basis does not constitute an error materially prejudicial to the substantial rights of the appellant. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a).

### *Sentence Severity*

The appellant argues his punishment was overly harsh, particularly in light of the sentence approved for AB Estacio, who received a bad conduct discharge, confinement for 12 months and reduction to E-1.

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We review sentence appropriateness de novo, employing "a sweeping congressional mandate" to ensure "a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384–85 (C.A.A.F. 2005) (citations omitted). The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985). We are not

required to engage in comparison of specific cases "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283). The "appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *Id.* If the appellant satisfies his burden, the Government must then establish a rational basis for the disparity. *Id.*

Although the appellant and AB Estacio were co-actors in the October 2011 tryst with the trainees and the subsequent attempts to cover it up, the cases as a whole are not closely related. In addition to the misconduct he committed with AB Estacio, the appellant also maltreated trainees, engaged in a separate instance of adultery, was absent without leave, violated numerous no-contact orders, pursued a prohibited relationship with a technical school trainee, and made two false official statements. When an appellant's case includes substantial unrelated misconduct in addition to that related to a co-actor, the underlying fairness rationale for comparing the two sentences no longer exists. *Cf. United States v. Wacha*, 55 M.J. 266, 268 (C.A.A.F. 2001) (finding cases not closely related when only 4 of the appellant's 16 drug offenses involved co-actor). The appellant's case is not one where the majority of the offenses were committed with the same co-actor, or where comparatively minor misconduct is being considered contemporaneously with a larger joint offense. Instead, the additional charges in the appellant's case arose from serious and substantial misconduct completely unrelated to the events involving AB Estacio. In such circumstances, the cases are distinct and are not closely related for sentence comparison purposes.

Even if we were to hold the intersection of the appellant's case and AB Estacio's case made them closely related, the appellant's additional misconduct would constitute a rational basis for the disparity in the sentences. While awaiting court-martial on charges of engaging in sexual relations with a trainee and trying to cover it up, he attempted to initiate a prohibited relationship with another trainee and lied about it. This evidence of incorrigibility alone would justify the disparity in sentences.

We next consider whether the appellant's sentence was appropriate "judged by 'individualized consideration' of the particular [appellant] 'on the basis of the nature and seriousness of the offense[s] and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)). The appellant's maltreatment of trainees, including the prohibited sexual relationship, directly undermined the BMT mission. He colluded with other MTIs in an attempt to escape accountability. While the disposition of those offenses was pending, his civil misconduct caused him to be absent from his unit and in another attempt to avoid accountability, he lied about it. Still undeterred, he attempted to develop a personal relationship with a technical school trainee, actually flaunting his own misconduct in the process. When confronted with this misconduct, he

lied again. Such willful disregard for the training mission and unresponsiveness to disciplinary efforts clearly merit significant punishment, and we find the approved sentence to be appropriate.

We have given individualized consideration to this particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all other matters contained in the record of trial. We find the approved sentence was clearly within the discretion of the convening authority, was appropriate in this case, and was not inappropriately severe.

*Errors in the Staff Judge Advocate's Recommendation*

The appellant argues two errors in the staff judge advocate's recommendation (SJAR) materially prejudiced him and require return of the case for new post-trial processing. The appellant points out the SJAR misstates the adjudged sentence by stating the appellant was reduced to the grade of E-3, rather than the grade of E-1 as actually adjudged. The SJAR also incorrectly stated the maximum sentence in this case was confinement for 15 years and 1 month rather than the correct maximum sentence, 22 years and 1 month.

Proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error. Rule for Courts-Martial 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least some "colorable showing of possible prejudice in terms of how the [perceived error] potentially affected [his] opportunity for clemency." *Id.* at 437.

We find no colorable showing of possible prejudice with regard to the misstatement of the reduction in grade. The convening authority's action, in ordering appellate leave, accurately stated the appellant's projected rank as Airman Basic. Accordingly, we find no basis to believe the error in the SJAR misled the convening authority on that aspect of the sentence.

The appellant also argues the convening authority might have "assumed" the appellant's misconduct was more severe than it was because the SJAR incorrectly indicated the adjudged sentence was closer to the maximum sentence than it actually was. The record does not support that argument. The convening authority was provided a

six-page-long report of result of trial setting out the charges, specifications, pleas, and findings. We are not persuaded that the convening authority relied on the maximum sentence rather than the specifications upon which the appellant was convicted in determining the severity of his misconduct. By the appellant's logic, had the court adjudged a sentence of one month confinement and no punitive discharge, the convening authority might have blindly concluded his misconduct was minor and approved even less. We find that suggestion implausible. Indeed, clemency is usually considered more appropriate as an adjudged sentence approaches the maximum allowable sentence, rather than the other way around. In this case, the SJAR suggested that the adjudged confinement constituted seventeen percent of the maximum rather than the correct eleven percent. In light of the appellant's persistent misconduct, we find the difference sufficiently small to foreclose the possibility that the convening authority would have granted any clemency on that basis had he been accurately advised. We find that the appellant's contention does not raise a colorable showing of possible prejudice.

*Unreasonable Delay*

Though not raised as an issue on appeal, we note the overall delay of more than 18 months between the time of docketing and review by this court is facially unreasonable. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Article 66(c), UCMJ, empowers the service courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ. *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). In this case, the appellant originally submitted an assignment of errors on 8 August 2014. While that assignment of errors was under consideration, on 7 October 2014, the appellant sought leave to file a supplemental assignment of error, addressing the enforceability of AETCI 36-2909. The court granted leave to file the supplemental assignment of error.

Utilizing the four factor test adopted in *Moreno*, we find the delay did not violate the appellant's due process rights. *See* 63 M.J. at 135. The supplemental assignment of error required substantial additional consideration of his case, and the appellant requested such consideration rather than demanding speedy resolution of the appeal. The delay, while presumptively unreasonable, did not exceed the *Moreno* standard by more than 90 days. We also note that the consideration of the supplemental assignment of error did not exceed the six months that our superior court found reasonable for the exercise of appellate decision-making in *Moreno*. *See id*. at 137–38. Finally, the appellant has not asserted he was prejudiced.

We have also considered whether, even in the absence of prejudice, sentence relief is justified based upon the delay. *United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006); *Tardif*, 57 M.J. at 224. We find that because the appellant requested consideration of the supplemental issue well into the appellate processing of his case, no *Tardif* relief is appropriate.

ACM 38396

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and sentence are

AFFIRMED.

ALLRED, Chief Judge, HECKER, Senior Judge, and Weber, Judge, concur.


MITCHELL, Senior Judge, with whom CONTOVEROS, Judge, joins, concurring in part and dissenting in part:

We concur with the entirety of the majority decision except on one issue: the allegation of error that Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships*, (2 March 2007) (certified current 26 September 2011), is not a lawful general regulation. On that portion of the opinion, we dissent.

Unlike the majority, we conclude that the primary purpose of Paragraph 2.17 of Air Force Instruction (AFI) 33-360, *Publications and Forms Management*, (18 May 2006) (incorporating changes through 12 July 2007),[5] is to provide due process notice to Airmen as to which provisions in an instruction are punitive. The issue is not whether this level of notice is required by the Constitution, case law, or federal law but whether the Air Force voluntarily chose to impose upon itself mandatory requirements for notice in punitive instructions. Finding that the Air Force did so, we find it is bound by those requirements and cannot prosecute an individual under Article 92(1), UCMJ, 10 U.S.C. § 892(1) for violating a regulation that does not comply with those requirements. In reaching this conclusion, we note the Government seeks to have this court read an instruction's use of the word "must" in describing mandatory behavior as "should" when the Government fails to comply with its terms. Ironically, the Government makes this argument to enforce criminal culpability against an appellant for a maximum of two years of confinement when he failed to follow the mandatory language of a "will not" instruction. In short, the Government argues that mandatory language in its instructions and publications is binding only on the individual and not on the institution. We disagree.

---

[5] Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships*, (2 March 2007) (certified current 26 September 2011), and Air Force Instruction 33-360, *Publications and Forms Management*, (18 May 2006) (incorporating changes through 12 July 2007) are the instructions applicable to the appellant's case. Unless otherwise stated, all references to these instructions are to these particular versions.

"General orders, like penal statutes, are to be strictly construed, and when doubt exists respecting an order's meaning or applicability, the doubt should be resolved in favor of the accused." *United States v. Hode*, 44 M.J. 816, 817 (A.F. Ct. Crim. App. 1996) (citations omitted). A plea of guilty to a violation of a lawful general order is improvident when the instruction is later determined not to be a lawful general order. *United States v. Shavrnoch*, 49 M.J. 334 (C.A.A.F. 1998). If the instruction is not punitive, then "there is a substantial basis in law for determining that appellant pleaded guilty to a charge involving a legal standard that does not constitute an offense under Article 92(1), UCMJ, thereby undermining his conviction as a matter of law." *Id.* at 339 (citations omitted) (internal quotation marks omitted).

For the first time on appeal, the appellant challenges that AETCI 36-2909 is not a lawful general order because it does not comply with AFI 33-360. According to AFI 33-360, Paragraph 2.17.1.4, "[p]aragraphs containing mandatory provisions or prohibitions *must* state that a failure to obey is a violation of Article 92 of the UCMJ. This statement should accompany each mandatory provision or prohibition, or may, if clear, refer to a series of mandatory provisions or prohibitions listed within a specific paragraph." (emphasis added.) Neither of the paragraphs charged in this case included such a statement within the paragraph itself. Moreover, the same instruction specifically states:

> The opening paragraph must clearly specify which parts of a publication contain mandatory provisions and prohibitions enforceable against the individual. *While such language standing alone in the opening paragraph does not make a publication punitive, it becomes punitive when combined with punitive language in the body of the publication.*

AFI 33-360, ¶ 2.17.1.3 (emphasis added).

Furthermore, Paragraph 2.17.1.4, immediately prior to the provision cited by the appellant, requires drafters to "[u]se language that expresses the mandatory nature of the provisions, such as 'will,' 'will not,' 'shall,' 'shall not,' 'must,' 'must not,' etc." The Government's own instruction states that "must" is mandatory language, yet on appeal the Government argues it is not bound by its own mandate.

Whereas in the past, notice of the punitive nature of a publication may have been sufficient if included solely in the purpose statement or opening paragraph, the governing instruction now quite clearly requires more. *Cf. Hode*, 44 M.J. at 818 (concluding the absence of such notice in the purpose statement of the instruction meant that no portion

of the instruction was punitive). In promulgating AFI 33-360 with these specific procedural requirements, the Secretary of the Air Force's intent was made explicit: to be punitive, a publication must include the "failure to obey" language in both the opening paragraph and the applicable substantive provisions. AETCI 36-2909 does not meet the prima facie requirements to be punitive. *See Shavrnoch*, 49 M.J. at 336 ("[I]f a regulation does not contain language establishing that it is a punitive regulation, a violation of the regulation is not a criminal offense under Article 92(1)").

> [A] golden thread in the military justice tapestry is that "either the President in promulgating the Manual for Courts-Martial or the Armed Services by adopting regulations can go even further than the Constitution and the Uniform Code in providing safeguards for military personnel." Regarding these regulations, we have held that a service must abide by them where the underlying purpose of the regulation is the protection of personal liberties or interests. More recently the Supreme Court and this Court have recognized that the Government is bound by its own regulations, especially when the regulations confer a right or benefit on an individual.

*United States v. Manuel*, 43 M.J. 282, 286 (C.A.A.F. 1995) (citations omitted).

As the majority points out, in *McGraner*, the Court of Military Appeals applied four factors in determining whether a regulation was intended to protect the interests of individuals. *United States v. McGraner*, 13 M.J. 408, 417–18 (C.M.A. 1982); *see also Manuel*, 43 M.J. at 287. The court considered the presence or absence of a specific remedy in the regulation, the primary purpose of the provision in question, the scope of the remedy necessary to protect the purported interest, and the presence or absence of any due process considerations discussed by the Supreme Court in *United States v. Caceres*, 440 U.S. 741 (1979). We weigh the balance of the factors differently than the majority. We acknowledge that the first factor weighs against the appellant; however, we conclude that the other three factors weigh so heavily in the appellant's favor such as to grant him relief.

The primary purpose of the provision in question is to provide notice to individuals of the punitive nature of the provisions. In *Hode*, we previously examined an instruction that failed to comply with an earlier version of the Air Force Instruction on requirements for publication of punitive instruction. There we concluded that the instruction provided a duty, but was not a punitive instruction. We reached this conclusion, in part because, "The procedural requirements in [the AFI dealing with publications] are so easy to comply with, that we can safely conclude from the absence of a notice in the purpose statement that the Secretary of the Air Force did not intend [the

AFI in question] to be a punitive instruction." *Hode*, 44 M.J. at 816. Here as well, the provision of AFI 33-360 is easy to comply with, and the current version of the AETCI complies with the requirements to include punitive language in the body of the publication.[6] Our holding in *Hode* was not a result of this court judicially imposing a requirement for notice in the purpose statement of a punitive instruction, but was instead this court enforcing the Air Force's own self-imposed requirements for punitive instructions.

This also ties directly into the final factor of protecting due process notice. Knowledge of a general order is presumed and "a lack of knowledge does not constitute a defense." *Manual for Courts-martial, United* States, pt. IV ¶ 92c.(1)(d) (2012 ed.). "But, some form of proper publication is necessary before such knowledge is presumed or there will be a violation of constitutional due process." *United States v. Tolkach*, 14 M.J. 239, 241, (C.M.A. 1982). The purpose of including the punitive language in each paragraph, especially when instructions can be voluminous, is to provide notice to Airmen.

The scope of the remedy is not overly onerous. A long history of cases have affirmed convictions to the lesser included offense of dereliction of duty in violation of Article 92(3), UCMJ, when violations of Article 92(1), UCMJ, are defective. *See Shavrnoch*, 49 M.J. 334; *Hode*, 44 M.J. 816; *Tolkach*, 14 M.J. 239; *United States v. Simmons*, 44 M.J. 819 (A.F. Ct. Crim. App. 1996); *United States v. Bivins*, 45 M.J. 501 (A.F. Ct. Crim. App. 1996). However, in light of *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010), it may be that Article 92(3), UCMJ, dereliction of duty, is now no longer a lesser included offenses of Article 92(1), UCMJ, failure to obey a lawful order. Since we are in the dissent, we need not resolve this issue in this case. Whether the remedy in this case is to set aside the conviction or affirm to the lesser included offense, we find that remedy is not overly onerous. The remedy does not prevent the Government from seeking to impose criminal culpability for the failure to obey this instruction or other similarly written instructions. The remedy requires the Government to properly charge the offense under either Article 92(2), UCMJ, for failure to obey other lawful orders which are not general regulations, or Article 92(3), UCMJ, for dereliction of duty.[7]

We conclude that AETCI 36-2909 was not "properly published" in accordance with AFI 36-330 and therefore is not enforceable as a lawful general order under Article 92(1), UCMJ.

---

[6] The current version of AETCI 36-2909 is as follows: "Paragraph **3.3. Specific Prohibitions and Responsibilities.** Conduct that violates the prohibitions and mandatory provisions of this paragraph, including its subparagraphs, by military personnel is a violation of Article 92, UCMJ[, 10 U.S.C. § 892]." This does not appear to be rote incomprehensible legal jargon which the majority fears would overwhelm or obscure the plain meaning of the regulation.

[7] Alternatively, the Air Force could rewrite its punitive instructions to meet its own self-imposed requirements or change its publications instruction. What it cannot do is continue to fail to comply with its own orders.

Even if we were to set aside these contested charges, we would not grant any sentence relief. This court has broad discretion when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

The dismissal of these two specifications does not dramatically change the penalty landscape; in fact, only the maximum confinement authorized would change. Without the convictions on these two specifications, the confinement exposure is reduced from 22 years and 1 month to 18 years and 1 month. The appellant was sentenced to confinement for 30 months. Having considered the totality of the circumstances, we would reassess the appellant's sentence to the same sentence approved by the convening authority.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

ACM 38396