# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32602**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Michael O. DAVIS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 1 December 2020

———————————

*Military Judge:* John C. Degnan.

*Sentence*: Sentence adjudged on 1 May 2019 by SpCM convened at Joint Base Lewis-McChord, Washington. Sentence entered by military judge on 24 May 2019: Bad-conduct discharge, confinement for 2 months, forfeiture of $1,000.00 pay per month for 2 months, and reduction to E-1.

*For Appellant:* Major Patrick J. Hughes, USAF.

*For Appellee:* Mary Ellen Payne, Esquire.

Before LEWIS, D. JOHNSON, and CADOTTE, *Appellate Military Judges*.

Senior Judge LEWIS delivered the opinion of the court, in which Judge D. JOHNSON joined. Judge CADOTTE filed a separate opinion concurring in the result.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

LEWIS, Senior Judge:

A special court-martial composed of a military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of

one specification of wrongful possession of lysergic acid diethylamide (LSD), and one specification of wrongful use of marijuana, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1,2] In addition, the military judge convicted Appellant, contrary to his pleas, of one specification of wrongful use of LSD on divers occasions, also a violation of Article 112a, UCMJ.[3] The military judge sentenced Appellant to a bad-conduct discharge, confinement for two months, forfeiture of $1,000.00 pay per month for two months, and reduction to the grade of E-1.

On the same day that trial adjourned, the military judge signed a statement of trial results.[4] A week later, on 8 May 2019, Appellant submitted his clemency request to the convening authority asking that his two months of adjudged confinement be reduced to one month of hard labor without confinement and restriction to the installation. On 16 May 2019, after consulting with the staff judge advocate (SJA), the convening authority signed a decision on action memorandum which included the following statements: (1) "I take no action on the sentence;" and (2) "Before declining to take action in this case, I considered matters timely submitted by the accused under [Rule for Courts-Martial (R.C.M.)] 1106." The convening authority's decision memorandum does not specifically indicate whether any portion of the sentence was approved. All

---

[1] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2019 ed.) (2019 *MCM*).

[2] In the PTA, Appellant and the convening authority agreed that Appellant would plead not guilty to the words "on divers occasions" in the marijuana use specification. The Government attempted to prove that Appellant used marijuana one additional time but the military judge found Appellant not guilty of the words "on divers occasions." An additional PTA term required the convening authority to dismiss with prejudice one specification of wrongful possession of marijuana, an alleged violation of Article 112a, UCMJ.

[3] In the PTA, Appellant and the convening authority agreed that Appellant would plead not guilty to the words "on divers occasions" in the LSD use specification. The Government attempted to prove Appellant used LSD additional times. The military judge convicted Appellant of this specification as charged.

[4] The statement of trial results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

of Appellant's convictions are for offenses that occurred prior to 1 January 2019[5] and the charge and specifications were referred to trial on 8 March 2019.

Appellant did not submit any post-trial motions to the military judge under R.C.M. 1104(b)(2)(B) alleging the post-trial action by the convening authority was incomplete, irregular, or contained error. On 24 May 2019, the military judge signed the entry of judgment.

Appellant submitted his case to us without an assignment of error. In conducting our review under Article 66, UCMJ, 10 U.S.C. § 866, we analyzed the language used in the convening authority's decision on action memorandum to determine whether it was erroneous.[6] For the reasons outlined below, we determine that a plain or obvious error exists and there is a colorable showing of possible prejudice such that a remand of Appellant's case to the Chief Trial Judge of the Air Force is warranted.

We are mindful that other judges on our court see the law differently than we do. A review of our recent decision in *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) makes clear that four distinct positions exist among the judges on this court, two of which are reflected in this case.[7]

## I. BACKGROUND

Appellant pleaded guilty to using marijuana on one occasion in September of 2017 while on a beach in the state of Washington with two other Airmen and a civilian female. In the providence inquiry and the stipulation of fact, Appellant admitted smoking marijuana out of a glass pipe by drawing the smoke into his mouth and throat. Appellant began coughing immediately afterwards. In the providence inquiry, Appellant denied feeling any effects from using marijuana but was confident that he ingested marijuana when he smoked it.

Appellant also pleaded guilty to using LSD one time. Sometime in August 2018, Appellant attended a party hosted by a senior airman at his house in Tacoma, Washington. While at the party, Appellant used a tab of LSD with several of his friends. Appellant's friends and later roommates, A1C JC and civilian KC—who were married to each other—provided the LSD for the group.

---

[5] Three of the specifications were referred to trial with the end date of "on or about 29 January 2019." The day before trial started, the charged time was shortened so the ending date for these three specifications was "on or about 31 December 2018."

[6] We did not order the Government to show cause as to why this case should not be remanded. We are familiar with the recent responses submitted by the Government on this issue in prior and pending cases. This decision was made for judicial economy.

[7] There was not a call for a vote to hear Appellant's case en banc.

Appellant chose one tab of LSD and placed it on his tongue where it remained for 15–20 minutes. Appellant then went to the bathroom and spit the tab out and flushed it down the toilet. In his providence inquiry, Appellant admitted his use of LSD was intentional and wrongful and he used it because he was weak-minded, wanted to fit in, and wanted his friends to approve of his actions. Appellant agreed with the military judge that he was one hundred percent confident that he ingested the LSD when it was on his tongue even though he stated he felt no effects after ingestion. Appellant described the effects the others experienced from using their LSD tabs and noted that his tab had come from that same sheet of LSD tabs. Appellant did not tell the others that he spit out his tab and admitted to the military judge that he "pretended to be high" to maintain appearances and to "not arouse [the] suspicion of [his] friends." To explain how he pretended to be high, Appellant stated that he initiated and participated in several activities such as building a fort out of cardboard boxes and using the liquid inside of glow sticks to paint the inside of the boxes.

Appellant also pleaded guilty to wrongfully possessing LSD one time. Specifically, on 25 December 2018, Appellant possessed LSD while at the off-base house in Olympia, Washington that he shared with A1C JC and KC. Again, A1C JC and KC supplied the LSD and others were present to use LSD. This time, as the group prepared to take their LSD tabs, Appellant hid his LSD tab in a fold in his shirt before faking that he took it. Appellant then went to his room to get his cellphone off its charger and left the LSD tab in his room. Upon his return to the group, Appellant pretended to be under the influence of LSD by looking at his phone screen and talking about the "the pretty colors" he saw. Later, Appellant grew tired of "putting on the charade" and went upstairs to his room to watch Netflix alone. Appellant admitted that he knew he possessed LSD because he accepted the LSD tab and held onto it until he placed it in his room.

To prove that Appellant used LSD on divers occasions, the Government called four witnesses who provided immunized testimony. One of the Government witnesses was A1C JC, the co-supplier of the LSD that Appellant pleaded guilty to possessing and using. The other three Government witnesses had been present at either the marijuana or the LSD incidents described above. Together, the four witnesses testified to three or more additional uses of LSD by Appellant prior to 25 December 2018. Two of the additional uses occurred in the on-base dormitories and the third additional use was at a surprise birthday party for an Airman who lived on-base. The witnesses recalled Appellant telling them he felt the effects from using LSD and displaying physical manifestations of such use. A1C JC and an additional Government witness testified they saw Appellant with LSD on his tongue during one of the contested uses.

In his defense to the additional LSD uses, Appellant testified that he faked using LSD two times in the on-base dormitories by hiding the tab between his fingers and later discarding the tab. Appellant testified he faked the effects of using LSD for hours afterwards in an attempt to fit in with his friends. Regarding the surprise birthday party on-base, Appellant testified that he was preparing to use an LSD tab but when it was handed to him it was dropped on the ground. Appellant testified he searched for the tab in the dark but did not remember finding it or using it. Appellant agreed it was possible that he used LSD this time and he agreed he did not fake the effects of using LSD.

Regarding the on-base surprise party, there was conflicting testimony from witnesses for both sides as to whether Appellant was just drunk or was displaying physical effects consistent with using LSD. Some witnesses recalled that Appellant admitted using LSD. After considering the evidence before him, the military judge convicted Appellant of using LSD on divers occasions.[8]

After the sentencing proceedings closed and the military judge announced the adjudged sentence, he inquired with the parties regarding the PTA's effect on the adjudged sentence. The military judge commented that Appendix A to the PTA stated that the convening authority "will undertake . . . [t]o not approve any confinement adjudged in excess of 90 days." The military judge then stated that he interpreted the effect of the PTA as "the convening authority may approve the sentence as adjudged." The parties agreed with the military judge's interpretation. Shortly thereafter, Appellant's court-martial was adjourned.

The PTA and Appendix A are appellate exhibits in the record of trial. Both are signed by the SJA and the convening authority. Paragraph 2 of the PTA states that Appellant offered to plead guilty "in consideration of the agreement by the convening authority to approve a sentence in accordance with the limitations set forth in Appendix A." Paragraph 6 of the PTA describes the possibility of a R.C.M. 1109 hearing, apparently under the 2016 version of the *Manual for Courts-Martial*, if Appellant committed a UCMJ offense between the

---

[8] Prior to findings deliberations, trial counsel notified the military judge that the Government was considering asking for special findings under R.C.M. 918(b) if the military judge found Appellant guilty of divers use of LSD "to specify which uses, if we were to get that point." After discussing several cases, neither side requested specific findings and the military judge determined he could enter a general verdict of guilty to the words "on divers occasions" if the Government proved Appellant's guilt beyond a reasonable doubt. *See United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008); *United States v. Walters*, 58 M.J. 391, 396 (C.A.A.F. 2003).

announcement of sentence and "the [c]onvening [a]uthority's approval of any sentence."[9]

The post-trial rights advisement provided to Appellant by his trial defense counsel is also an appellate exhibit. Paragraph 11 addresses the convening authority's action and includes the following advice to Appellant: "Subject to the limitations set out in Article 60, UCMJ, and explained in the paragraph below, the [c]onvening [a]uthority may take action on the findings and/or approve all, some, or none of the sentence in his or her sole discretion."[10] Paragraph 12 of the post-trial rights advisement explains the limits of Article 60, UCMJ, and the circumstances under which the convening authority "lacks the authority to grant relief."[11]

## II. POST-TRIAL PROCESSING

### A. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a statute and a R.C.M. provision are also questions of law that we review de novo. *United States v. Hunter,* 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted); *United States v. Martinelli,* 62 M.J. 52, 56 (C.A.A.F. 2005) (citation omitted).

Executive Order 13,825, § 6(b), requires that the version of Article 60, UCMJ, 10 U.S.C. § 860, "in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60: (1) requires action by the convening authority on the sentence." *See* 2018 Amendments to the *Manual for Courts-Martial, United States*, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018). The version of Article 60, UCMJ, in effect between the dates of the earliest charged offense in this case, 1 May 2017, stated "[a]ction on the sentence of a court-martial shall be taken by the

---

[9] This current provision is found in R.C.M. 1108 of the 2019 *MCM.*

[10] Trial defense counsel did not specify which version of Article 60, UCMJ, was being referenced.

[11] The submission of matters letter from the wing legal office to Appellant contained two statements about the convening authority taking action. The first statement described Appellant's right to submit matters "before the convening authority decides what, *if any*, action the convening authority will take on your case." (Emphasis added) In isolation, this statement provides some support for the view that the wing legal office understood action on the sentence was not required by the law. However, the second statement uses different language when explaining that clemency matters submitted might "affect the convening authority's decision to approve or disapprove the findings of guilt or part of the sentence in your case as permitted by law."

convening authority." 10 U.S.C. § 860(c)(2)(A) (*Manual for Courts-Martial, United States* (2016 ed.)).

In *Aumont*, a split, en banc, unpublished decision, our court affirmed the findings and sentence when the convening authority took no action in a case referred on or after 1 January 2019 with a convicted offense prior to 1 January 2019. Unpub. op. at *20, 28. The opinion of the court found no error in the convening authority's decision memorandum because it met the legacy requirements of Article 60, UCMJ, but this opinion was only joined by two judges. *Id.* at *1, 24. One additional judge wrote separately and concurred in the finding of no error but for different reasons. *Id.* at *40–42 (Posch, S.J., concurring in part and in the result). On the other hand, six of the ten judges found taking no action in the case to be an error. *Id.* at *31 (Lewis, S.J., concurring in part and in the result); *id.* at *100 (J. Johnson, C.J., dissenting in part and in the result). Four of those six judges found the error to be a fundamental misstep requiring remand without testing for material prejudice. *Id.* at *104 (J. Johnson, C.J. dissenting in part and in the result). Two judges, who make up the majority in this panel, found the appellant in *Aumont* forfeited the issue and then conducted a plain error analysis and determined that the error was plain or obvious, but there was no colorable showing of possible prejudice because the convening authority explicitly denied the only clemency request made by the appellant in *Aumont*—a deferral of mandatory forfeitures. *Id.* at *32–37 (Lewis, S.J., concurring in part and in the result). The four opinions in *Aumont* demonstrate the extent of the split on this issue among the judges on our court.

## B. Analysis

We follow the same approach we did in the concurring opinion from *Aumont* but with a different result. *See id.* at *28–39 (Lewis, S.J., concurring in part and in the result). We find Appellant forfeited the issue of a plain or obvious error in the convening authority's decision memorandum. Contrary to our conclusion in *Aumont*, we find a colorable showing of possible prejudice to be apparent in a similar fashion to *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427, at *15 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.) and *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.). Our esteemed colleague who concurs in the result here finds the same fundamental misstep that he did in *Aumont* and *Cruspero* and therefore would not test for prejudice. *See Cruspero*, unpub. op. at *20 (Cadotte, J., concurring in the result); *Aumont*, unpub. op. at *89 (J. Johnson, C.J., concurring in part and dissenting in part).

We begin with whether Appellant waived or forfeited the issue of error in the convening authority's decision memorandum which included the statements: "I take no action on the sentence" and "Before declining to take action

in the case . . ." Upon receipt of the convening authority's decision memorandum, Appellant and his trial defense counsel had an opportunity under R.C.M. 1104(b)(2)(B) to file a motion alleging that the convening authority's action was incomplete, irregular, or contained error. No such motion was filed. The record of trial contains no information on whether the failure to file such a motion was an intentional relinquishment of a known right or merely an oversight by Appellant and his trial defense counsel. There is no information in the record of trial regarding the substance of the SJA's advice[12] to the convening authority or what the convening authority understood the law required on taking action on the sentence. Certain parts of the record of trial indicate the parties and the military judge, at least at one point, expected the convening authority would approve some[13] or all of the sentence adjudged when he took action on the sentence.

Under the prior version of Article 66, UCMJ, we had the discretion to determine whether to apply waiver or forfeiture in a particular case, or to pierce waiver or forfeiture in order to correct a legal error. 10 U.S.C. § 866 (2016 *MCM*); *see United States v. Lee*, No. ACM 39531, 2020 CCA LEXIS 61, at *17 (A.F. Ct. Crim. App. 26 Feb. 2020) (unpub. op.) (citations omitted). We find that our discretion on this matter has not changed despite congressional modifications to the version of Article 66, UCMJ, which applies to this case. Exercising that discretion, we find that Appellant's failure to file a motion under R.C.M. 1104(b)(2)(B) forfeited his right to object to the accuracy of the convening authority's decision memorandum absent plain error. Under a plain error analysis, an appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (quoting *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)).

We find the decision to take no action on the sentence and the declination to take action in the case were plain or obvious errors. In a case like this, where the charge and specifications were referred on or after 1 January 2019 and Appellant was found guilty of a specification for an offense occurring before 1 January 2019, we find the convening authority cannot simultaneously "take no action on the sentence" and decline to take action in the case while satisfying Exec. Order 13,825, § 6(b)(1), which "requires action by the convening authority on the sentence." As the convening authority failed to approve any part

---

[12] R.C.M. 1109(d)(2) only requires the convening authority to "consult" with the SJA. This rule does not explicitly require the SJA to give any particular advice during this consultation, let alone provide written advice on the applicable law.

[13] The convening authority could not disapprove, commute, or suspend Appellant's bad-conduct discharge. 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*).

of the sentence, we find plain or obvious error in the convening authority's decision memorandum. Our conclusion of error is consistent with our sister-service court's decision in *United States v. Coffman*, 79 M.J. 820 (A. Ct. Crim. App. 2020). The court in *Coffman* held "indicating 'N/A' or stating 'No Action' does not constitute taking action in a case." *Id*. at 823.

We find the threshold of "some colorable showing of possible prejudice" is still the appropriate standard for an error impacting an appellant's request for clemency. *See LeBlanc*, 74 M.J. at 660 (quoting *Scalo*, 60 M.J. at 437). Appellant has made no claim of prejudice and his appellate defense counsel did not annotate his awareness of the issue in the convening authority's decision in his merits brief.[14] Still, we find the low standard of some colorable showing of possible prejudice to be apparent from the record of trial. Part of the reasoning behind the low threshold is to "avoid undue speculation as to how certain information might impact the convening authority's broad discretion." *Scalo*, 60 M.J. at 437 (citation omitted). The convening authority could have disapproved, suspended, or commuted Appellant's adjudged two months of confinement. Appellant requested specific relief in his clemency submission to be released from confinement and perform a month of hard labor without confinement while being restricted to the installation's limits. If the convening authority failed to take action on the sentence and in the case—as his memorandum indicates—then we are unsure whether he made a decision on Appellant's clemency request which was within the convening authority's power to grant. Under these circumstances, we find a colorable showing of possible prejudice to be apparent and that a remand to the Chief Trial Judge of the Air Force is the best method to remedy this error before we complete our review under Article 66, UCMJ.

### III. CONCLUSION

This case is **REMANDED** to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as no action was taken on Appellant's adjudged sentence and in the case as required by law.

Our remand returns jurisdiction over the case to a detailed military judge and dismisses this appellate proceeding consistent with Rule 29(b)(2) of the

---

[14] *Cf. United States v. Barrick*, No ACM. S32579, 2020 CCA LEXIS 346, at *3 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.) (explaining the assignment of error brief stated it was reasonable to consider the convening authority's decision not to act as the equivalent of action).

Joint Rules for Appellate Procedure for Courts of Criminal Appeals. JT. CT. CRIM. APP. R. 29(b)(2). A detailed military judge may:

(1) Correct the Statement of Trial Results;

(2) Return the record of trial to the convening authority or his successor to take action on the sentence;

(3) Conduct one or more Article 66(f)(3), UCMJ, proceedings using the procedural rules for post-trial Article 39(a), UCMJ, sessions; and/or

(4) Modify the Entry of Judgment.

Thereafter, the record of trial will be returned to the court for completion of appellate review under Article 66, UCMJ.

CADOTTE, Judge (concurring in the result):

I agree with the conclusion of the court with respect to remanding this case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as no action was taken on Appellant's adjudged sentence as required by law. However, as I did in *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427, at *19–20 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.) (Cadotte, J., concurring in the result), I find the convening authority's decision to "take no action on the sentence" to be a "fundamental misstep in military justice procedure" as articulated by Chief Judge J. Johnson in his opinion, concurring in part and dissenting in part, in *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *92–105 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) (J. Johnson, C.J., dissenting in part and in the result), which I joined. As such, I do not agree with the majority in conducting a plain error analysis. The convening authority's action must be "clear and unambiguous," and in this case it is not. *See United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (citing *United States v. Loft*, 10 M.J. 262, 268 (C.M.A. 1981)). I disagree with my esteemed colleagues' decision to test for prejudice. Accordingly, I would find error and remand regardless of whether Appellant was prejudiced.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court