# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32433**

————————————

**UNITED STATES**
*Appellee*

**v.**

**James I. MILLER**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 April 2018

————————————

*Military Judge:* Brendon K. Tukey.

*Approved sentence:* Bad-conduct discharge, confinement for 7 months, forfeiture of $1000.00 pay per month for 7 months, and reduction to E-1. Sentence adjudged 26 July 2016 by SPCM convened at Misawa Air Base, Japan.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Meredith L. Steer, USAF; Captain Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges.*

Judge MINK delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MINK, Judge:

A special court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of two specifications of committing lewd acts upon a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for seven months, forfeiture of $1000.00 pay per month for seven months, and reduction to E-1.[1]

The sole issue raised by Appellant on appeal is whether he is entitled to new post-trial processing because the convening authority considered new victim impact matters that Appellant was not given the opportunity to address. Although not raised by the parties, we also address additional errors in the staff judge advocate's recommendation (SJAR) to include erroneous advice regarding the maximum sentence and the fact that an incorrect personal data sheet (PDS) was attached to the SJAR. Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

In July 2015, Appellant was a 24-year-old Airman and member of a band hired to perform music at a 35th Security Forces Squadron barbeque on Misawa Air Base (AB), Japan. During the barbeque, HF, the 14-year-old dependent daughter of MSgt MF and Mrs. AF, approached Appellant, who played the guitar in the band, and told him that she was interested in learning to play the guitar. Appellant offered to teach HF how to play the guitar. Appellant, HF, and HF's parents agreed Appellant would provide HF free weekly guitar lessons at the Mokuteki Teen Center on Misawa AB.

During one of the subsequent weekly guitar lessons, Appellant told HF that he was physically and emotionally attracted to her and kissed her on the lips. Appellant kissed HF on the lips during four other guitar lessons between July and December of 2015.

---

[1] The PTA between Appellant and the convening authority providing that the latter would refer Appellant's case to trial by special court-martial contained no limitation on the sentence that could be approved, and therefore, had no impact on the convening authority's ability to approve the adjudged sentence.

On a separate occasion in September 2015, after HF invited Appellant to her house, Appellant drove to HF's house, parked his car nearby, and HF came outside and got into the front passenger seat of Appellant's car. Appellant then pulled HF onto his lap and they began kissing. While they were kissing, Appellant grabbed HF's buttocks and fondled her breasts.

In December 2015, after discovering an unfamiliar cell phone in HF's bedroom, MSgt MF pretended to be HF and exchanged text messages with Appellant, who asked HF to come to his dormitory room and expressed the desire to kiss her. MSgt MF then reported what he had discovered to the Air Force Office of Special Investigations.

HF did not testify during the sentencing portion of Appellant's court-martial, but she did submit a handwritten statement discussing the impact of Appellant's actions on her life. Her father, MSgt MF, did testify about the consequences of Appellant's actions on HF and his family, including the decision to return HF and her mother back to the continental United States at the family's own expense in an effort to make sure that HF was further protected. MSgt MF also testified as to the family separation that followed and the stress resulting from these circumstances.

## II. DISCUSSION

### A. Victim Impact Statement

On 12 September 2016, the staff judge advocate (SJA) signed the SJAR, which was served on Appellant. On 20 September 2016, Appellant submitted a clemency letter to the convening authority, requesting that his time in confinement be reduced. Also attached to his clemency letter were several documents that had been admitted during the sentencing portion of his trial. The SJA then prepared the addendum to the SJAR, which listed an attachment identified as "Victim's Submission of Matters" and included a parenthetical indicating that it had been "Provided to [Appellant] on 13 Sep 16," the day after Appellant was served with the SJAR. The "Victim's Submission of Matters" memorandum was a two-page document dated 12 September 2016 and signed by MSgt MF. The memorandum submitted by MSgt MF constituted a victim impact statement authorized under Rule for Courts-Martial (R.C.M.) 1105A. *See also* Air Force Instruction (AFI) 51-201, *Administration of Military Justice*,

¶ 9.9 (6 Jun. 2013, as amended by AFGM 2016-1, 3 Aug. 2016).[2] A victim of an offense is entitled to submit matters for consideration by the convening authority before action is taken on the court-martial. R.C.M. 1105A. When a victim is under 18 years of age, the child's parent is included in the definition of a "victim" who may submit a victim impact statement. *Id.* MSgt MF's statement discussed much of the same information he related during his trial testimony, but also included a recommendation that the convening authority approve the adjudged sentence.

On appeal, relying on the various detailed receipts included in the record, appellate defense counsel asserts there is no indication that Appellant's trial defense counsel ever received MSgt MF's statement. In addition, appellate defense counsel argues that the record has conflicting information as to when Appellant received MSgt MF's statement, but asserts the receipt Appellant signed on 30 September 2016 demonstrates that he did not receive the SJAR addendum or MSgt MF's statement until after the convening authority's action on that same date, depriving Appellant of the opportunity to respond to what constituted a "new matter." *See* R.C.M. 1106(f)(7). Appellant only requested reduced confinement in his clemency request, which appellate defense counsel acknowledges the convening authority lacked the power to grant.[3] *See* R.C.M. 1107(d)(1)(B). However, appellate defense counsel asserts that Appellant suffered prejudice in that, had he received MSgt MF's statement, Appellant "may have joined his character letters in generally requesting leniency," since MSgt MF's statement echoed the SJAR advice that the convening authority approve the sentence as adjudged. Appellate defense counsel also asserts that Appellant suffered prejudice due to the lack of opportunity to respond to MSgt MF's reactions to the offenses as Appellant's trial defense counsel had at trial.

As a result of Appellant's assertion of this error, the Government submitted and this court accepted a declaration by a paralegal in the Misawa AB legal office and email correspondence between the paralegal and the defense paralegal. These documents established that Appellant's trial defense counsel received a copy of MSgt MF's statement on 13 September 2016, the same date that the addendum to the SJAR indicates MSgt MF's statement was provided

---

[2] This version of AFI 51-201 was in effect during the post-trial processing of Appellant's case in September 2016.

[3] Appellant's trial defense counsel did not submit a memorandum with Appellant's clemency matters to the convening authority.

to Appellant. However, the record still contains no receipt from Appellant indicating that he received MSgt MF's statement, other than when he received the SJAR addendum after action had been taken. The inclusion of such a receipt in the record would have obviated the need for this issue to be addressed on appeal.

Despite the absence of a separate receipt indicating that Appellant received MSgt MF's statement on 13 September 2016, we disagree that the record is "conflicting" as to when Appellant received MSgt MF's statement. To the contrary, the information contained within the record indicates that Appellant received MSgt MF's statement on 13 September 2016 (as stated by the SJA in the addendum to the SJAR), and again on 30 September 2016 when he received a copy along with the addendum to the SJAR. The record, as it stands now, is clear that Appellant's trial defense counsel received MSgt MF's statement on 13 September 2016, allowing sufficient time for Appellant and his trial defense counsel to consult and determine whether and how to respond to MSgt MF's statement prior to the due date for submission of Appellant's clemency matters. Notably, Appellant has not provided any evidence that he did *not* receive a copy of MSgt MF's statement on 13 September 2016. In the absence of any such information in the record, we are left to conclude that Appellant and his trial defense counsel received MSgt MF's statement with sufficient time to address any matter contained therein upon the submission of clemency matters. Accordingly, despite the absence of a receipt, we find Appellant has not demonstrated error with respect to service of the victim impact statement.

Even assuming *arguendo* that Appellant did not personally receive a copy of MSgt MF's statement until 30 September 2016, after the convening authority had taken action, we find no colorable showing of possible prejudice. *See United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005). Appellant's trial defense counsel had received MSgt MF's statement prior to Appellant's submission of clemency matters. Further, we find appellate defense counsel's assertions as to how Appellant might have asked for different relief had he received MSgt MF's statement prior to submission of his clemency request unpersuasive. Finally, even had Appellant modified his clemency request, considering the totality of the circumstances we find no reasonable likelihood that the convening authority might have taken different action in this case.

## B. SJAR Errors

Our review of the record in this case also revealed two errors in the SJAR. First, the SJA incorrectly advised the convening authority as to the maximum

sentence that could be imposed. Second, the PDS attached to the SJAR contained incorrect information.

The proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015). If the Defense does not make a timely comment on an error in the SJAR, the error is waived "unless it is prejudicial under a plain error analysis." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citing R.C.M. 1106(f); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Under a plain error analysis, we assess whether: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Kho*, 54 M.J. at 65). To meet the third prong of the plain error test in the context of a post-trial SJAR error, whether that error is preserved or is otherwise considered under the plain error doctrine, we must find "some colorable showing of possible prejudice." *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). Because Appellant did not object to the SJAR, we test for plain error. *Scalo*, 60 M.J at 436.

The maximum sentence that could be imposed in Appellant's case was the jurisdictional limit of a special court-martial, to include: a bad-conduct discharge; confinement for 12 months; forfeiture of two-thirds pay for 12 months; and reduction to E-1. R.C.M. 201(f)(2)(B)(i). The SJAR erroneously stated that the maximum sentence that could be imposed was a *dishonorable* discharge, confinement for 12 months, forfeiture of *all* pay *and allowances*, and a reduction to E-1.

Despite this obvious error, we find no colorable showing of possible prejudice. The adjudged and approved sentence including a bad-conduct discharge, confinement for seven months, forfeiture of $1000.00 per month for seven months, and reduction to E-1 was a legally permissible sentence, well within the jurisdictional limits of a special court-martial. The Government did not seek an impermissible sentence and none was adjudged. While Appellant requested a reduction in the adjudged confinement of seven months, he did not allege any error in the SJAR and does not assert he suffered any prejudice as a result. In some cases, an SJAR that overstates the maximum punishment may prejudice an appellant. *See, e.g., United States v. Gooding*, No. ACM S32337 (A.F. Ct Crim. App. 6 Dec. 2016) (unpub. op.). However, in this case we find no basis to conclude the SJAR's erroneous inclusion of impermissible maximum punishments influenced the convening authority to Appellant's detriment. Given the sentence adjudged by the court-martial and the convening authority's agreement to refer Appellant's case to a special court-martial under

the terms of the PTA, we are confident that a correct statement of the maximum imposable sentence in the SJAR would not have led to a more favorable recommendation by the SJA or clemency by the convening authority. Therefore, no relief is warranted on this basis.

Next, we note that both the PDS introduced during Appellant's court-martial and the copy attached to the SJAR contained an error. Specifically, the PDS failed to record the fact that Appellant had received a prior action under Article 15, UCMJ, 10 U.S.C. § 815, unrelated to the offenses charged in this case. We find this error also plainly obvious, given the fact that Appellant's Record of Nonjudicial Punishment (NJP) Proceedings pursuant to Article 15, UCMJ, was introduced into evidence during Appellant's court-martial. However, we again find no colorable showing of possible prejudice and conclude that a correct PDS indicating that Appellant had a previous Article 15 action would not have led to a more favorable recommendation by the SJA or clemency by the convening authority. To the contrary, the absence of the notation of a prior Article 15 action on the PDS could have worked to Appellant's benefit, even though the Article 15 record was included in the sentencing exhibits admitted at trial, since it was not highlighted on the PDS. Again, we find no relief warranted for this error.

Lastly, we note that this is yet another case before this court where the lack of attention in the post-trial processing of a court-martial has resulted in avoidable clear errors requiring appellate review even though we ultimately find Appellant is not entitled to any relief.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court