# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39723**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kashus M. WAY**
Airman (E-2),[1] U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 December 2020

———————————

*Military Judge:* Jennifer E. Powell (arraignment); Christopher M. Schumann.

*Sentence:* Sentence adjudged on 13 May 2019 by GCM convened at Eielson Air Force Base, Alaska. Sentence entered by military judge on 5 June 2019: Dishonorable discharge, confinement for 30 months, reduction to E-1, and a reprimand.

*For Appellant:* Major David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before LEWIS, D. JOHNSON, and CADOTTE, *Appellate Military Judges.*

Senior Judge LEWIS delivered the opinion of the court, in which Judge D. JOHNSON joined. Judge CADOTTE filed a separate opinion concurring in part, dissenting in part and in the result.

———————————

[1] Appellant was an airman first class (E-3) at the time of arraignment. By the time of his trial he had been reduced in grade to airman (E-2) by nonjudicial punishment.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

LEWIS, Senior Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of wrongfully viewing child pornography on divers occasions and one specification of wrongfully distributing child pornography on divers occasions, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2,3] The military judge sentenced Appellant to a dishonorable discharge, confinement for 36 months, reduction to the grade of E-1, and a reprimand. During post-trial processing, consistent with the PTA, the convening authority reduced the confinement to 30 months.

Before us, Appellant raises two issues: (1) whether new post-trial processing is required because there is no evidence that the convening authority considered Appellant's clemency submission; and (2) whether the military judge considered the contents of a prosecution exhibit not admitted into evidence, a violation of due process of law that should have resulted in a mistrial.[4] After considering issue (2) we find it warrants no further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Additionally, in light of *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439 (A.F. Ct. Crim. App. 8 Dec. 2020) (unpub. op.), we consider whether the convening authority failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).[5]

---

[2] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[3] Pursuant to the PTA, the convening authority withdrew and dismissed with prejudice one specification of wrongful possession of child pornography on divers occasions, an alleged violation of Article 134, UCMJ.

[4] Issue (2) is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have reworded it slightly.

[5] We did not order the Government to show cause as to why this case should not be remanded. We are familiar with the recent responses submitted by the Government on this issue in prior and pending cases. This decision was made for judicial economy.

For the reasons outlined below, we find no colorable showing of possible prejudice from Appellant's clemency process. We affirm the findings and sentence in the entry of judgment (EoJ).

## I. BACKGROUND

Appellant entered the Air Force on 27 January 2016. At the time of the offenses, he was assigned to his first permanent duty station, Eielson Air Force Base (AFB), Alaska.

On 8 May 2018, a detective with the Anchorage Police Department (APD) notified agents with the Air Force Office of Special Investigations (AFOSI) that an Internet Protocol (IP) address located on Eielson AFB was suspected of distributing child pornography. During APD's investigation, the detective served warrants to produce documents upon: (1) Skype, the communication platform used in the suspected distribution of child pornography; and (2) Alaska Communications Systems Group, the Internet service provider for the IP address used. The returned documents showed the Skype account and the IP address used in the suspected child pornography distribution both belonged to Appellant.

At trial, Appellant agreed that between 26 January 2018 and 27 January 2018, he participated in a Skype chat conversation with "stephaneballet68," an unknown individual. Appellant and "stephaneballet68" were able to communicate with each other using automated translation software even though their messages were in different languages. According to Appellant, before the Skype conversation, the two had realized they had mutual interests in "anime and illegal anime pornography" and "recognized [they] may have images that [each of them] were interested in sharing." "Stephaneballet68" suggested the two converse over Skype in order to "trade those images."

Over a period of several hours, the two exchanged messages and website links on Skype. Multiple times during the chat, Appellant sent "stephaneballet68" digital images containing child pornography. Multiple times, "stephaneballet68" sent Appellant digital images of child pornography which Appellant viewed. A total of 30 unique files constituting child pornography were found to be associated with Appellant's Skype account. Appellant stipulated that "[m]any of the images depict young boys appearing between the ages of 8 and 12 years old either naked or engaged in sexual acts" such as "masturbating, digital, and penile penetration."

Appellant also consented to a search of his dormitory room on Eielson AFB. AFOSI agents seized a notebook containing sketches. At trial, Appellant stip-

ulated that he drew the sketches and that several of them depicted "what appear to be young men or minors in various sexual positions and poses" and "bondage of young men or minors in sexually suggestive positions."[6]

## II. POST-TRIAL PROCESSING

### A. Additional Background

On the same day that trial adjourned, the military judge signed a statement of trial results.[7] Ten days later, on 23 May 2019, Appellant's trial defense counsel submitted a one-page clemency request asking that the convening authority reduce, commute, or suspend the reduction to the grade of E-1 and allow Appellant to "retain the rank of E-2." Trial defense counsel argued the clemency was appropriate "because it gives [Appellant] some credit for taking full responsibility at [a] court-martial and saving the government significant time and resources in prosecuting him." Trial defense counsel did not argue the financial implications of the reduction in grade to E-1. According to the personal data sheet admitted at trial, Appellant was single with no dependents.

On 31 May 2019, the convening authority signed a "Decision on Action" memorandum with the following statements in it:

1. I hereby take the following action on the findings [sic][8] in the case of *United States v. Airman Kashus M. Way*: the part of the sentence extending to 36 months confinement is reduced to 30 months confinement. . . .

---

[6] The Government offered the sketches as a prosecution exhibit during presentencing. The military judge sustained trial defense counsel's objection and did not admit the exhibit. In ruling, the military judge conducted a Mil. R. Evid. 403 balancing test and found the sketches "cumulative with the information contained in the stipulation of fact; and, to some extent, prejudicial to [Appellant], given the actual physical content of the drawings themselves." Appellant's issue (2), which we addressed above, alleged that the military judge considered the actual sketches even though they were not admitted into evidence.

[7] The statement of trial results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

[8] This is an error. Given the language that follows, we believe the convening authority meant to use the word "sentence" instead of "findings." Appellant does not claim error or prejudice from this typographical error and we find none.

2. The relief granted was pursuant to a plea agreement.[9]

3. Prior to coming to this decision, I consulted with my Staff Judge Advocate.

Additionally, the convening authority's memorandum directed Appellant to take appellate leave upon completion of his confinement sentence and contained the language of Appellant's adjudged reprimand.

The convening authority's memorandum did not specify whether the convening authority considered Appellant's clemency request prior to signing the memorandum. Additionally, the memorandum did not state whether the convening authority "approved" any portion of the adjudged sentence. We address both of these matters in our analysis below.

On 5 June 2019, the military judge signed the EoJ which entered into the record a sentence of a dishonorable discharge, 30 months of confinement, reduction to the grade of E-1, and a reprimand. The EoJ also contained the language of Appellant's reprimand and a statement showing that the findings and the sentence "reflect all post-trial actions by the convening authority."

On 6 June 2019, Appellant's trial defense counsel was served a copy of the convening authority's memorandum and the EoJ. No post-trial motions were filed alleging errors in the clemency process or that the convening authority's action was incomplete, irregular, or erroneous. *See* R.C.M. 1104(b)(1)(E)–(F); R.C.M. 1104(b)(2)(B).

On appeal, in response to Appellant's assignment of error—whether the convening authority considered Appellant's clemency submission—the Gov-

---

[9] Appellant's case involved a PTA, not a "plea agreement" as that term is used in Article 53a, UCMJ, 10 U.S.C. § 853a, and R.C.M. 705. R.C.M. 705(a) states "Subject to limitations as the Secretary concerned may prescribe, an accused and the convening authority may enter into a plea agreement in accordance with this rule." The Secretary of the Air Force has directed that "[PTAs] apply to cases where any of the charged offenses occurred prior to 1 January 2019, regardless of when the case was referred to trial" and "plea agreements apply to cases where all of the charges offenses occurred on or after 1 January 2019, and to cases with offenses occurring both before 1 January 2019 and on or after 1 January 2019 (straddling cases) if the accused opts in to the Military Justice Act framework." Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 12.5.1, 12.5.2 (18 Jan. 2019). All of Appellant's offenses occurred prior to 1 January 2019. Appellant does not claim error or prejudice from the misidentification of the PTA as a "plea agreement" and we find no prejudicial error.

ernment obtained a declaration from the convening authority, Lieutenant General (Lt Gen) TB, dated 9 April 2020. We granted the Government's motion to attach the declaration over Appellant's objection.

At the time of the declaration, Lt Gen TB was still the commander of Eleventh Air Force at Joint Base Elmendorf-Richardson, Alaska, and the general court-martial convening authority for Eielson AFB.[10] It was Lt Gen TB who referred the charge and specifications to a general court-martial and entered into the PTA with Appellant. Lt Gen TB declared that he reviewed Appellant's clemency submission and was aware of the requirement to review it prior to "making a decision on action." Lt Gen TB specifically recalled that Appellant requested to "reduce, commute, or suspend the reduction in grade as adjudged from E-2 to E-1 and restore [Appellant's] rank." Finally, Lt Gen TB declared "after considering the submission, I determined additional action was not warranted and took action only on the sentence as required by the [PTA]."

## B. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a statute and a R.C.M. provision are also questions of law that we review de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted); *United States v. Martinelli*, 62 M.J. 52, 56 (C.A.A.F. 2005) (citation omitted).

Executive Order 13,825, § 6(b), requires that the version of Article 60, UCMJ, "in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60: (1) requires action by the convening authority on the sentence." *See* 2018 Amendments to the *Manual for Courts-Martial, United States*, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018). The version of Article 60, UCMJ, in effect on the date of the earliest charged offense in this case, 1 May 2017, stated "[a]ction on the sentence of a court-martial shall be taken by the convening authority." 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*).

## C. Analysis

### 1. Consideration of Clemency Submission

This case is not the first time we have addressed whether a convening authority must specify that clemency matters were considered and include such a matter in the record of trial. In *United States v. Jackman*, we stated we were

---

[10] This is Lt Gen TB's second assignment serving as a general court-martial convening authority as he was previously the commander of Eighth Air Force, Barksdale AFB, Louisiana.

aware of "no [R.C.M.] that requires documentation by the convening authority that the clemency matters were considered" while acknowledging the value of such a practice to show compliance with R.C.M. 1109(d)(3)(A). No. ACM 39685, 2020 CCA LEXIS 273, at *12–13 (A.F. Ct. Crim. App. 21 Aug. 2020) (per curiam) (unpub. op.) (footnote omitted). In *Jackman*, we tested for plain error as no post-trial motion was filed with the military judge to "raise a concern" that the clemency matters were not properly considered. *Id.* at *13. We found no prejudice in *Jackman* as the appellant did not attempt to show he was prejudiced and the merits brief submitted specifically indicated that he suffered no prejudice from "any such" post-trial processing error. *Id.* at *14.

In this case, Appellant does not claim that the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*) contains a rule that requires the convening authority to document consideration of clemency matters. Instead, Appellant argues that a decision of the United States Court of Military Appeals applies to his case, *United States v. Craig*, 28 M.J. 321 (C.M.A. 1989). In *Craig*, the court "announced" that it "will not 'guess' as to whether clemency matters prepared by the defense counsel were attached to the recommendation [of the staff judge advocate] or otherwise considered by the convening authority." *Id.* at 325; *see also United States v. Bakcsi*, 64 M.J. 544, 545 (A.F. Ct. Crim. App. 2006) (finding the convening authority must be advised in the post-trial recommendation of the requirement to consider all clemency matters submitted). Appellant acknowledges that there is no longer a requirement for a staff judge advocate to provide a written recommendation to the convening authority under the post-trial processing rules that apply to his case. Appellant insists, however, that the decisions of *Craig* and *Bakcsi* required the convening authority to indicate he considered the submitted clemency matters.

The Government disagrees with Appellant's view that the record of trial must contain evidence that the convening authority considered the clemency submitted. Regarding *Craig*, the Government argues that its precedent does not apply due to significant changes in military law that apply in Appellant's case, including that no staff judge advocate's recommendation was required.

Additionally, the Government cites *United States v. Stephens*, 56 M.J. 391, 392 (C.A.A.F. 2002), which noted the Manual for Courts-Martial did not "require the convening authority to state in the final action what materials were reviewed in reaching a final decision." In *Stephens*, the court stated "[w]e decline to hold that a document embodying the convening authority's final action is defective simply because it refers to the SJA's recommendation without also referring to attachments, such as an addendum or clemency materials." *Id.*

After considering the arguments by the parties, we conclude that the post-trial processing system that applied in *Craig*, *Bakcsi*, and *Stephens* is different

than the one that applies to Appellant's case and gives those precedents limited applicability to this case. We highlight two major differences.

First, under the prior post-trial processing system, written advice of the staff judge advocate to the convening authority was required. *See, e.g.*, R.C.M. 1106 (2016 *MCM*). In Appellant's case, the convening authority only needed to "consult" with the staff judge advocate to comply with R.C.M. 1109(d)(2). Here, there is no question that such a consultation occurred. The convening authority's memorandum states a consultation occurred and Appellant raises no challenge to this conclusion.

Second, under the prior post-trial processing system, the military judge retained "control over a court-martial until the record [was] authenticated and forwarded to the convening authority for review." *United States v. Neal*, 68 M.J. 289, 296 (C.A.A.F. 2010) (citation omitted); *see also* R.C.M. 1104 (2016 *MCM*). In the system that applies to Appellant's case, the military judge retained authority to hear post-trial motions including those filed within five days of the EoJ being served on trial defense counsel. *See* R.C.M. 1104(b). In our view, permitting military judges to retain authority after convening authority action is a dramatic change in post-trial processing. No longer is the convening authority's action the last step in the trial process; it is now the EoJ. The system now allows the concerns that we address here to be addressed with the military judge via a post-trial motion. As we see it, the most appropriate time to raise a concern about the convening authority's memorandum was within five days of receipt of the convening authority's decision memorandum by Appellant's trial defense counsel, not months later on direct appeal.

Given the significant changes in the post-trial processing system that applied to Appellant's case, we conclude there was no legal requirement that the convening authority's memorandum specify that Appellant's clemency matters were considered. Therefore, we have determined there is no error to correct.

If we assume *arguendo* that there was error that was not waived by failing to file a post-trial motion, then we find it appropriate to test for plain error. To prevail under a plain error analysis, Appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *See United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (quoting *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). We have applied the threshold of "some colorable showing of possible prejudice" as the appropriate standard for an error impacting an appellant's request for clemency under the current post-trial processing system. *See, e.g.*, *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427, at *14–15 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.) (quoting *LeBlanc*, 74 M.J. at 660).

Appellant argues that he has satisfied the low standard of some colorable showing of possible prejudice because our court can only "guess" whether the convening authority was "even aware of Appellant's request to retain his rank." In opposition, the Government argues that we should rely on a "presumption of regularity" with the convening authority's exercise of his responsibilities on clemency, absent some evidence to the contrary. *See United States v. Foy*, 30 M.J. 664, 666 (A.F.C.M.R. 1999) (applying presumption of regularity when clemency matters are attached to an addendum to the staff judge advocate's recommendation). Alternatively, the Government argues Appellant was not prejudiced given the declaration submitted by Lt Gen TB. We agree with the Government's second argument.

While Appellant has suggested that guesswork is necessary to resolve this issue, we see no need for guesswork, but an evaluation of whether Appellant can meet his burden of some colorable showing of possible prejudice. The main obstacle to Appellant's argument is the sworn declaration of Lt Gen TB which we have concluded we may consider along with other matters in the record of trial.[11]

After review of the above, we conclude that Appellant's one-page clemency submission was considered by Lt Gen TB before he signed the "Decision on Action" memorandum. Lt Gen TB recalled reviewing Appellant's clemency submission and knew Appellant's case well. After all, Lt Gen TB was the same convening authority who referred the charge and specifications to a general court-martial. Lt Gen TB had also agreed to a PTA with Appellant just 16 days prior to Appellant submitting his clemency letter. As we have said in prior cases, we are mindful that *post facto* explanations in declarations may unconsciously be influenced with the benefit of hindsight. *See, e.g.*, *United States v. Ward*, No ACM. 39648, 2020 CCA LEXIS 305, at *11–12 (A.F. Ct. Crim. App. 3 Sep. 2020) (unpub. op.) (citations omitted). Here, after weighing Lt Gen TB's declaration along with the content of Appellant's clemency request and other matters in the record of trial, we conclude that Appellant has failed to carry his burden of some colorable showing of possible prejudice. Appellant's request for new post-trial processing warrants no relief.

---

[11] In *United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020), the United States Court of Appeals for the Armed Forces recognized that "some [of its] precedents have allowed the [Courts of Criminal Appeals] to supplement the record when deciding issues that are raised by materials in the record." Accordingly, we understand *Jessie* to permit us to consider this declaration after Appellant claimed error in the convening authority's Decision on Action memorandum.

### 2. Taking Action on the Sentence

We now consider what must be done, if anything, because the convening authority's decision memorandum did not explicitly state that he "approved" each portion of the sentence contained in the EoJ. Appellant raises no error and claims no prejudice on this front. His brief does quite the opposite by stating in certain terms that "[t]he convening authority approved only 30 months of the adjudged confinement pursuant to the [PTA], otherwise approved the sentence as adjudged, and, but for the dishonorable discharge, ordered the sentence executed." The difficulty with adopting the statement in Appellant's brief is that it cites the convening authority's decision memorandum in support and it is obvious that the cited memorandum does not use the words "approved" or "executed." Therefore, this matter requires closer examination.

Recently, in *Lopez*, a panel of our court addressed the question of "whether the convening authority's action with respect to one element of the sentence satisfies the pre-1 January 2019 requirement under Article 60, UCMJ [(2016 *MCM*)] that the convening authority take action on the sentence." Unpub. op. at *10–11. In a 2–1 decision, the majority remanded the case to the Chief Trial Judge of the Air Force after concluding that failure to take action on the entire sentence does not satisfy Article 60, UCMJ (2016 *MCM*) and the convening authority "was required to explicitly state his approval or disapproval of the sentence." *Id.* at *11 (citation omitted). Our esteemed colleague who dissents in part adopts the reasoning of the majority in *Lopez* and would similarly remand Appellant's case without testing for material prejudice.

We, however, do not adopt the rationale of the majority in *Lopez*, but to be clear, we also do not adopt the position of the dissent in *Lopez*. *Id.* at *12–46 (Posch, S.J., dissenting) (finding no error after applying Article 60a, UCMJ, 10 U.S.C. § 860a (2019 *MCM*)). Instead, we adhere to the approach we used in prior cases where the convening authority's decision memoranda either stated no action was taken on the sentence, or in the case. *See, e.g.*, *Cruspero*, unpub. op. at *12–15; *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *29–37 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) (Lewis, S.J., concurring in part and in the result); *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246, at *13–16 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.).

Our approach begins with determining whether Appellant waived or forfeited the issue by not filing a post-trial motion within five days after receipt of the convening authority's decision memorandum to allege the action was incomplete, irregular, or contained error. *See* R.C.M. 1104(b)(2)(B). In our view, Appellant's opportunity to challenge the decision memorandum before the military judge and his failure to file such a motion warrants appropriate consid-

eration. As we did in *Cruspero* and for the same reasoning, we find that Appellant's failure to file a post-trial motion forfeited his right to object to the accuracy of the memorandum, absent plain error. *See* unpub. op. at *13–14.

Applying the plain error test described above, even if we assume without deciding that there was error in the decision memorandum that was plain or obvious, we can discern no colorable showing of possible prejudice to Appellant. In cases like *Cruspero* and *Finco* we found such a colorable showing to be "apparent" as we were "unsure" whether the convening authority made a decision on a clemency request that could be granted. *Cruspero*, unpub. op. at *15; *Finco*, unpub. op. at *16. Here, we are not unsure whether the convening authority acted on Appellant's clemency request. Lt Gen TB's post-trial declaration assists us in concluding that Appellant's clemency request was fairly considered and Lt Gen TB determined that granting the request was not warranted. Under these circumstances, we conclude that there is no colorable showing of possible prejudice from the convening authority's memorandum and that the EoJ correctly reflects the entered sentence.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

CADOTTE, Judge (concurring in part, dissenting in part and in the result):

I agree with the conclusion of the court with respect to issues (1) and (2). However, I would remand this case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the decision memorandum as the convening authority's action taken on Appellant's adjudged sentence was ambiguous and incomplete. I adopt the reasoning of the majority in *United States v. Lopez*, No. ACM S32597, 2020 CCA LEXIS 439 (A.F. Ct. Crim. App. 8 Dec. 2020) (unpub. op.), and find the convening authority here, as was the case with *Lopez*, "was required to explicitly state his approval or disapproval of the sentence." *Id.* at *11. The convening authority failed to do so, thus I conclude the convening authority failed to take action on the entire sentence in accordance with Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, Uniform Code of Military Justice, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.)). As I did in *United States v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427, at *19–20 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.) (Cadotte, J., concurring in the result), I find the convening authority's decision to be a "fundamental misstep in military justice

procedure." *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *92–105 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) (J. Johnson, C.J., dissenting in part and in the result). As such, I do not agree with the majority's approach in conducting a plain error analysis. The convening authority's action must be "clear and unambiguous," and in this case it is not. *See United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (citing *United States v. Loft*, 10 M.J. 262, 268 (C.M.A. 1981)). I disagree with my esteemed colleagues' decision to test for material prejudice. Accordingly, I would find error and remand regardless of whether Appellant was materially prejudiced.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court