# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40199 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kevin R. ROMERO-ALEGRIA**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 16 August 2023

———————————

*Military Judge*: Shad R. Kidd.

*Sentence*: Sentence adjudged on 23 June 2021 by GCM convened at Tinker Air Force Base, Oklahoma. Sentence entered by military judge on 6 August 2021: Dishonorable discharge, confinement for 32 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant*: Major Eshawn R. Rawlley, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major John P. Patera, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge GRUEN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of two specifications of sexual abuse of a child and one specification of wrongful possession of child pornography in violation of Articles 120b and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 32 months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority provided the adjudged reprimand but otherwise took no action on the findings or sentence.

Appellant raises three issues on appeal: (1) whether Appellant received ineffective assistance of counsel; (2) whether Appellant's adjudged sentence is inappropriately severe; and (3) whether the conditions of Appellant's confinement subjected him to cruel and unusual punishment in violation of the Eighth Amendment[2] and Article 55, UCMJ, 10 U.S.C. § 855, or rendered his sentence inappropriately severe.[3] In addition, although not raised as an assignment of error, we consider whether Appellant is entitled to relief for unreasonable appellate delay. We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In January 2019, Appellant was a 25-year-old senior airman stationed at Tinker Air Force Base (AFB), Oklahoma. That month Appellant met AS, a 14-year-old girl living in Texas, through the Internet. AS informed Appellant of her age shortly after they met. Initially Appellant and AS were just friends with certain mutual interests, but in March 2019 their communications became sexual. On divers occasions between March 2019 and February 2020, Appellant intentionally exposed his penis to AS via communications technology, including live video chats, recorded videos, and still images. Between May 2019 and February 2020, on divers occasions Appellant exchanged sexual electronic messages with AS in which they would describe performing imagined sexual acts with each other. In addition, Appellant requested and received a sexually explicit video from AS depicting child pornography; he also possessed a sexually explicit still image of AS.

---

[1] All references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] U.S. CONST. amend. VIII.

[3] Appellant personally raises issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Appellant met AS in person three times between October and December 2019—after AS had turned 15 years old—at a convention in Texas, at AS's home in Texas, and in Oklahoma City. On each occasion, one or both of AS's parents were present. On each occasion Appellant and AS shared a hug but did not otherwise engage in physical contact. AS kept her sexual interactions with Appellant hidden from her parents, who were unaware of them.

On 26 February 2020, AS's father JS discovered a message from Appellant on AS's computer which caused him to confront AS about her relationship with Appellant. AS admitted she was in an online relationship with Appellant. JS called Appellant, who admitted to masturbating with AS online. The following day, JS called the Air Force Office of Special Investigations (AFOSI), who apprehended Appellant. When interviewed by AFOSI agents, Appellant waived his Article 31, UCMJ, 10 U.S.C. § 831, rights and admitted to exposing his penis to AS, communicating indecent language to AS, and possessing child pornography.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

#### 1. Additional Background

Appellant was represented at his court-martial by Major (Maj) IJ. Through interviews with AS's parents and other pretrial discovery, Maj IJ perceived that the family's affiliation with a particular religious community caused AS's parents to be "particularly concerned with [AS's] chastity and her standing in their religious community," and to be "particularly aggrieved by the sexual nature of the alleged offenses."[4] Maj IJ theorized that AS's "ardent participation" in the prosecution was driven by her desire to convince her parents that Appellant had "corrupted" her.

As he prepared to cross-examine AS's parents, Maj IJ decided to focus on a strategy "analogous to that of an 'eggshell plaintiff,'" suggesting that AS's parents were "unreasonably aggrieved" by the circumstances of the offenses due to their religious beliefs. Maj IJ had not "previewed" this strategy to AS's parents during pretrial interviews, and he planned to surprise them with this strategy in order to highlight the influence of their beliefs. Maj IJ was aware the military judge was a member of the same religion as AS's family; accordingly, Maj IJ thought it "prudent" to "voir dire the military judge to ensure he was not employing any unconscious bias in the case." Maj IJ provided advance

---

[4] Quotations in this paragraph and the next are from a sworn declaration Maj IJ provided in response to an order from this court.

notice to trial counsel and the military judge that he intended to voir dire the military judge on this subject.

At the outset of Appellant's court-martial, after the military judge announced his detailing and qualifications, Maj IJ conducted a brief voir dire of the military judge.[5] The military judge answered the voir dire questions to the effect that he agreed it possible a person's faith could lead them to view certain offenses more harshly than someone else would, that the military judge would have no difficulty with "bias issues being elicited regarding [ ] faith in cross-examination" provided it was "relevant" and "not to attack or degrade inappropriately," and the military judge would not "hold it against" Maj IJ or Appellant if Maj IJ "elicit[ed] bias issues related to any particular faith." Maj IJ did not challenge the military judge based on these responses or for any other reason.

Both AS's parents testified as prosecution witnesses during presentencing proceedings. Trial counsel did not specifically question them regarding their religious faith during direct examination; however, AS's mother did mention AS had withdrawn from participating in religious activities after Appellant's misconduct came to light, in addition to other negative impacts. During cross-examination and among other questions, Maj IJ asked both parents about their religious views on sexual relations and abstinence, how AS had begun to question her religion after Appellant's offenses were discovered, and whether their religious faith made them more upset by Appellant's conduct. Maj IJ also elicited that AS's father had previously held a leadership position within their religious community. Both parents downplayed the extent to which their religious beliefs influenced their feelings about the offenses. Maj IJ had the following colloquy with AS's mother:

> Q. Is it true that both the sexual nature of this case and [AS's] relationship with faith bother you as a matter of your own religious beliefs?
>
> A. No, because my concern for my daughter supersedes my faith and what [Appellant] has introduced to her through his lewd communications, and teaching her how to go around firewalls and protections that we had in place. And also the fact that in 2019, she was teaching him about [our religious faith], which he also discussed with us in our home when he was there November 2019.
>
> Q. Let me ask you this way, do you feel more offended as a matter of your faith, based on just the nature of the charges and

---

[5] Maj IJ did not ask questions that would have disclosed any religious affiliation of the military judge.

what he did, did that make you feel more upset about what he did?

A. My faith has nothing to do with the offense that I feel. I am offended that he would do this to a child and pursuing the court case that we have now is not just about protecting my daughter, but about protecting any future potential, individuals that he may end up insulting with this kind of behavior.

Maj IJ had the following colloquy with AS's father:

Q. Does the sexual nature of this case and where [AS] currently stands with her faith, do those two things bother you as just a matter of your faith?

A. It bothers me as a father.

Q. It has nothing to do with your faith?

A. I didn't say that. Are we encouraged to abstain? Yes. Are we perfect? No. And as a [religious leader], my primary goal was to work with the youth of [our community] and unfortunately things like, things that violate the law of chastity and such do occur in the world today. Did it bother me? Yes, as a[ religious] leader, yes. Did I hold it against her? No.

Maj IJ assessed that "both parents presented themselves as calm, reasonable, and measured" during cross-examination. In particular, Maj IJ found AS's mother's testimony to be "more muted than her religiously motivated concerns during pre-trial preparation." As a result, Maj IJ decided not to follow up with an "eggshell plaintiff"-type theme during his sentencing argument, and instead "argue[d] the general facts and nature of the offenses."

Appellant's plea agreement with the convening authority required the military judge to adjudge between 10 months and 32 months of confinement for each of the three specifications if the military judge also adjudged a dishonorable discharge, with each term of confinement to run concurrently. The military judge sentenced Appellant to 32 months of confinement for Specification 1 of Charge I (committing a lewd act by intentionally exposing his genitalia to AS), 30 months for Specification 2 of Charge I (committing a lewd act by communicating indecent language), and 24 months for the Specification of Charge II (possessing child pornography), resulting in an overall term of confinement of 32 months.

**2. Law**

The Sixth Amendment[6] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citation omitted). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (citation omitted). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome: (1) are the appellant's allegations true, and if so, "is there a reasonable explanation for counsel's actions;" (2) if the allegations are true, did trial defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers;" and (3) if trial defense counsel were deficient, is there "a reasonable probability that, absent the errors," there would have been a different result? *Id.* (alteration and omission in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). With respect to prejudice, a "reasonable probability" of a different result is "a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* (quoting *Strickland*, 466 U.S. at 694).

**3. Analysis**

Appellant contends Maj IJ's cross-examination of AS's parents constituted ineffective assistance of counsel, especially in light of his knowledge that the military judge was a member of the same religious faith. Appellant asserts the military judge "watched defense counsel depict the values of his [religion] as ultra-conservative, emphasize how AS's relationship with Appellant offended the values of the judge's [religion], underscore how Appellant's misconduct caused emotional anguish to fellow [ ] members, and then draw attention to AS's crisis of faith . . . ." Appellant concedes the military judge "said nothing on the record to betray his umbrage," but nevertheless "[i]t is reasonable to conclude" the military judge did take umbrage, even if unconsciously. Appellant argues the damage caused by Maj IJ's unreasonable strategy is reflected

---

[6] U.S. CONST. amend. VI.

in the military judge's sentence, which included the maximum amount of confinement that could be coupled with a dishonorable discharge in accordance with the plea agreement.

We are not persuaded Appellant has overcome the strong presumption that Maj IJ's performance was within the bounds of reasonable professional assistance. As an initial matter, we recognize that other trial defense counsel in Maj IJ's position might have elected not to explore the possible influence of AS's parents' religious beliefs during cross-examination. However, the Sixth Amendment standard for effective representation is not simply a question of what many or most other trial defense counsel might have chosen to do. Moreover, the sufficiency of trial defense counsel's performance is not determined by the success of a particular strategy, but whether counsel made a reasonable choice among available alternatives. *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (citation omitted).

We do not find Maj IJ's cross-examination strategy was so unreasonable that Maj IJ "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Based on pretrial interviews and other discovery, Maj IJ believed he might portray AS's parents as particularly sensitive to the impact of Appellant's offenses. If true, this could have been a relevant consideration for the military judge in evaluating their testimony, as well as AS's unsworn statement. Some of Maj IJ's predicate questions did imply to a certain extent that AS's parents might have been particularly offended by Appellant's conduct because of their religious beliefs. However, AS's parents downplayed the influence of their religious views, and did not come across as especially sensitive. Maj IJ adjusted to the testimony and reasonably did not return to that potential theme during argument. Maj IJ's questions were not degrading or dismissive, and the record gives no indication the military judge was offended by them. Although perhaps unsuccessful, we do not find Maj IJ's cross-examination on this point measurably below the performance expected of fallible lawyers.

Appellant suggests Maj IJ's voir dire of the military judge was "ineffectual" because it did not lead to a challenge for cause against the military judge, and actually aggravated the subsequent cross-examination of AS's parents. However, Maj IJ's purpose in conducting the voir dire was not to disqualify the military judge, but to ensure the military judge "was not employing any unconscious bias in the case." To that end, Maj IJ secured the military judge's agreement that religious faith could influence a witness's views, and assurance the military judge would not hold questions about faith against the Defense if the questions were for a "relevant" purpose rather than "to attack or degrade inappropriately."

Assuming *arguendo* Maj IJ's performance was deficient, we further find Appellant has failed to demonstrate Maj IJ's voir dire and cross-examination undermined confidence in the outcome of the court-martial. *See Datavs*, 71 M.J. at 424. Maj IJ's questioning of AS's parents was not hostile or offensive, and the military judge's voir dire and the rest of the record give no indication the military judge—as the sentencing authority—was offended or disturbed by Maj IJ's strategy. That the military judge imposed a dishonorable discharge and 32 months of confinement as permitted by the plea agreement does not *ipso facto* demonstrate prejudice. As described below in relation to issue (2), Appellant was convicted of three serious sexual offenses against a child, involving several circumstances unrelated to religion that the military judge could reasonably have found aggravating. The plea agreement represented a very significant reduction in the amount of confinement to which Appellant was exposed. Moreover, AS's parents minimized the significance of their religious beliefs on how the offenses affected them. On the other hand, they and AS herself described how Appellant's conduct significantly negatively impacted AS emotionally, socially, and educationally. Accordingly, we find Appellant has not demonstrated he is entitled to relief.

## B. Sentence Severity

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted). Our sentence appropriateness review includes "considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). Although we have "broad discretionary power to review sentence appropriateness," *United States v. Kelly*, 77 M.J. 404, 405 (C.A.A.F. 2018), we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Courts of Criminal Appeals (CCAs) are "not required . . . to engage in sentence comparison with specific [other] cases 'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Cases are "closely related" when, for example, they

involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id*. Although not required to do so, a CCA may compare an appellant's case to other non-"closely related" cases in order to assess the propriety of the sentence. *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001). However, unless the cases are closely related, "[t]he appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *Ballard*, 20 M.J. at 283).

### 2. Analysis

Appellant contends his sentence to confinement for 32 months is inappropriately severe. He notes this was the maximum term of confinement to which the military judge could sentence him in conjunction with a dishonorable discharge in accordance with the terms of the plea agreement.[7] Appellant contends that he took responsibility and expressed remorse for his offenses. He further invites this court to compare his sentence to the lesser sentences received by three other servicemembers convicted of sexual abuse of minors, as reflected in prior opinions of this court between 2016 and 2022. Appellant requests this court reduce his term of confinement to 10 months, or alternatively 12 months if his dishonorable discharge is reduced to a bad-conduct discharge.

With respect to comparing Appellant's sentence to those adjudged in other courts-martial, Appellant has not attempted to demonstrate any of those cases are in any way closely related to his own, and we conclude they are not related. *See Lacy*, 50 M.J. at 288. We find, moreover, Appellant has not demonstrated that an exception to the general rule against directly comparing sentences in non-closely related cases should apply in this case. *See LeBlanc*, 74 M.J. at 659. Accordingly, we decline to engage in such comparisons here.[8]

---

[7] The plea agreement further provided Appellant could be sentenced to 12 to 38 months of confinement for each specification if Appellant received a bad-conduct discharge, or 24 to 48 months of confinement for each specification if Appellant received no punitive discharge, with all terms of confinement to run concurrently.

[8] The Government has not objected to our consideration of the cases Appellant cites on the grounds that they are outside the record of trial. *See United States v. Jessie*, 79 M.J. 437, 441–46 (C.A.A.F. 2020). In light of our conclusion that sentence comparison is not appropriate in this case, we decline to further address the application of *Jessie* to this issue. *Cf. United States v. Behunin*, 83 M.J. 158, 161 (C.A.A.F. 2023) (assuming without deciding the CCA properly considered the entry of judgment from a separate

As described above in relation to issue (1), the military judge sentenced Appellant to concurrent terms of confinement of 32 months, 30 months, and 24 months for the three specifications of which Appellant was convicted. In the absence of a plea agreement, these offenses individually carried maximum terms of confinement of 15 years, 15 years, and 10 years, respectively. Thus, although the military judge did sentence Appellant to the maximum term of confinement for one of the specifications, and to the maximum total amount of confinement permitted by the plea agreement, the range permitted by the plea agreement represented a significant reduction in the maximum confinement for these offenses generally.

Although Appellant admitted to his misconduct, the military judge could reasonably have found other circumstances of Appellant's case to be aggravating. For example, Appellant persisted in his lewd acts with AS over a number of months, and he solicited AS to send him the video of child pornography Appellant was convicted of possessing. Moreover, AS's parents and one of her former athletic instructors testified regarding the significant negative effects Appellant's offenses had on AS and her family, and AS also explained the negative impact in her oral and written unsworn statements.

Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

## C. Confinement Conditions

### 1. Additional Background

Near the conclusion of Appellant's court-martial, the military judge confirmed with Appellant that Maj IJ had advised him in writing of his post-trial and appellate rights. This document, with signed acknowledgements by Appellant and Maj IJ, is included in the record as an appellate exhibit, and included the following advice:

> In order to get relief for the poor conditions of your confinement, you ordinarily **must** first exhaust every administrative avenue available to try to correct the issue. . . . To exhaust administrative avenues for relief, you should do each of the following: (1) submit a complaint to the confinement facility, preferably in writing; (2) request relief through clemency, if known at that time; and (3) file a complaint with the commander who ordered

court-martial); *United States v. Stanton*, 80 M.J. 415, 417 n.2 (C.A.A.F. 2021) (considering documents not included in or attached to the record of trial "because neither party has objected to [the court's] consideration of them").

your confinement under Article 138, UCMJ, which needs to be done within 90 days of your discovery of the improper confinement conditions.

On 23 June 2021, Appellant was sentenced and entered confinement in Midwest City Jail (MCJ) in Midwest City, Oklahoma, a civilian confinement facility. Appellant was segregated from non-military confinees and shared a room approximately 25 feet long and 12 feet wide with two other servicemembers. Appellant remained at MCJ for 78 days until he was transferred to military confinement at the Naval Consolidated Brig in Charleston, South Carolina, on 8 September 2021.

On 29 June 2021, Maj IJ submitted Appellant's clemency request to the convening authority, consisting of a memorandum from Maj IJ with an attached memorandum signed by Appellant. Among other matters, both memoranda commented on the conditions of Appellant's confinement at MCJ. Appellant asserted the room where he stayed was furnished with four bunks, a toilet, a shower, a table, a bench, and a telephone; the room was dirty and windowless; he had only a thin "exercise mat" to sleep on and one blanket; he slept poorly and was beginning to experience back pain; he was permitted to leave only for scheduled appointments; he implied the food was substandard; and he was concerned the drinking water available in the room was not clean. Maj IJ described the conditions as "simply unacceptable" and "well below military confinement standards."

On appeal, Appellant moved to attach to the record a declaration from himself dated 24 February 2023. Appellant's declaration reiterated some of the concerns raised in his clemency memorandum, as well as some additional ones. He again asserted he received only a thin mat and blanket for his bunk, and as a result he experienced poor sleep and back pain. Appellant asserted he spent 73 of his 78 days at MCJ entirely inside his cell, and was allowed to leave only for medical or legal appointments until his transfer to military confinement. He asserted he had no access to television or outside sources of information. Appellant complained the food was in small quantities and unappetizing, and as a result he lost 14 pounds during his confinement at MCJ. He asserted the drinking water from the sink was unclean. Appellant asserted the cell itself was also unclean and occupied by crickets and roaches. According to Appellant, he "wore the same jumpsuit for four weeks without it being washed." At one point the air conditioner failed, and the cell became "unbearably hot and humid." Although segregated from non-military confinees, Appellant asserted that non-servicemembers were kept "in the cells immediately next to and across from" his. Appellant asserts that he did not understand MCJ had a formal prisoner grievance system, and that the MCJ staff "often ignored or delayed" his requests for towels, legal calls, and clean uniforms, and denied

his request for clean drinking water. Appellant asserts he complained about these conditions to his commander and first sergeant when they visited him, but that they offered no assistance and told him he "would be transferred soon." This court granted Appellant's motion to attach.

In response, the Government moved to attach declarations from the MCJ Administrator and the Tinker AFB noncommissioned officer-in-charge (NCOIC) of confinement, dated 10 and 13 April 2023, respectively, with several attachments to the latter. Among other subjects, these declarations described inspections MCJ had undergone in 2021 and 2022 by Air Force and Oklahoma State authorities, with no material health or safety violations being identified. Notably, these declarations confirmed that by agreement between MCJ and the Air Force, servicemembers were to be kept segregated from non-military confinees, and the MCJ Administrator confirmed there were no recreation options for Air Force confinees. In addition, the NCOIC stated he had briefed Appellant on the MCJ complaint and grievance procedures, which involve requesting and submitting a written form, and he provided a signed acknowledgment by Appellant that he had been so briefed. The MCJ Administrator asserted Appellant had made no formal grievances during his confinement at MCJ.

### 2. Law

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to

[his] health and safety; and (3) that he "has exhausted the pris-
oner-grievance system . . . and that he has petitioned for relief
under Article 138, UCMJ, 10 USC § 938 [(2000)]."

*Id.* (omission and second alteration in original) (footnotes omitted); *see also
United States v. Pullings*, 83 M.J. 205, 206 (C.A.A.F. 2023) (applying the *Lovett*
test to claims of cruel and unusual confinement conditions).

The United States Court of Appeals for the Armed Forces (CAAF) has held
CCAs may grant relief due to confinement conditions even in the absence of an
Eighth Amendment or Article 55, UCMJ, violation, provided it finds a legal
error that warrants relief. *United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F.
2016).

### 3. Analysis

As an initial matter, we note we may consider the declarations of Appellant,
the MCJ Administrator, and the NCOIC to evaluate Appellant's claims of cruel
and unusual punishment in violation of the Eighth Amendment and Article 55,
UCMJ, despite these declarations being outside the "entire record." *See United
States v. Jessie*, 79 M.J. 437, 440–44 (C.A.A.F. 2020). In addition, because Ap-
pellant's allegedly unlawful confinement conditions are also raised by the rec-
ord, and are not fully resolvable within the record itself, we may also consider
these declarations in determining whether Appellant's confinement at MCJ
warrants sentence relief even in the absence of an Eighth Amendment or Arti-
cle 55, UCMJ, violation. *See United States v. Willman*, 81 M.J. 355, 358
(C.A.A.F. 2021), *cert. denied*, 142 S. Ct. 2811 (2022); *Jessie*, 79 M.J. at 442 (ci-
tations omitted); *Gay*, 75 M.J. at 268.

We have considered whether a post-trial evidentiary hearing is required to
resolve contradictions between Appellant's assertions and those of the MCJ
Administrator and the confinement NCOIC. *See United States v. Ginn*, 47 M.J.
236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967)
(per curiam). We find such a hearing is not required. To the extent Appellant
asserts he was not made aware of the MCJ grievance procedures, the record
compellingly demonstrates otherwise. *See Ginn*, 47 M.J. at 248. To the extent
there are other discrepancies among the declarations, even if we resolved the
differences in Appellant's favor, he would not be entitled to relief. *See id.*

As the CAAF recently reaffirmed in *Pullings*, Appellant bears the burden
to demonstrate all three conditions set forth in *Lovett* have been met in order
to be entitled to relief under the Eighth Amendment or Article 55, UCMJ—
including the requirement that he petitioned for relief under Article 138,
UCMJ, and exhausted the MCJ grievance system. 83 M.J. at 209 (citing *Lovett*,
63 M.J. at 215). Appellant concedes he did not seek relief pursuant to Article

138, UCMJ. In addition, as stated, the record compellingly demonstrates Appellant failed to exhaust the prisoner-grievance system with respect to the claims he has raised on appeal. *See Ginn*, 47 M.J. at 248. Moreover, we find no cause to excuse Appellant's failure to pursue such relief before seeking relief from the appellate courts. Appellant was advised of the necessity to exhaust administrative remedies in the written post-trial rights advice he acknowledged signing before his court-martial. The confinement NCOIC asserts he advised Appellant of the MCJ grievance procedure and provided Appellant's written acknowledgment to that effect. Appellant does not dispute that he failed to make a formal grievance or complaint, or to initiate an Article 138, UCMJ, complaint. Therefore, Appellant cannot prevail, and under the circumstances of this case we do not decide the merits of Appellant's claims with respect to the remaining *Lovett* requirements.

We have also considered whether Appellant's claims warrant sentence relief under our Article 66(d), UCMJ, authority despite Appellant's failure to demonstrate his entitlement to relief under *Lovett*. *See Gay*, 75 M.J. at 268. We find that they do not. For the most part, Appellant's complaints do not indicate a denial of necessities or indifference to Appellant's health or safety that would amount to a legal error by Air Force or confinement authorities. That the MCJ administrator concedes Appellant was not afforded recreation outside his cell or regular exposure to sunlight gives us pause. *See, e.g.*, *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (holding under the circumstances of that case the denial of outdoor exercise violated the Eighth Amendment); *but see Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) (citing with approval *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (per curiam) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day)). Considering the entirety of the circumstances, including *inter alia* the size of Appellant's cell, his ability to engage in some physical activity, and that he was not held in solitary confinement, we find the conditions of Appellant's confinement at MCJ do not warrant relief.

**D. Appellate Delay**

Appellant's record of trial was originally docketed with this court on 1 November 2021. Appellant requested and was granted eight enlargements of time to file his assignments of error, over the Government's opposition, extending the deadline until 27 September 2022.

On 24 August 2022, appellate defense counsel submitted an unopposed motion to view sealed material in the original record of trial, which this court granted on 1 September 2022. On the same date, this court issued an order to the Government to show good cause as to why it should not remand the record due to omission and misidentification of certain attachments to appellate ex-

hibits the court had identified *sua sponte*. On 16 September 2022, the Government requested the court remand the record for correction. On 22 September 2022, this court remanded the record for correction, directing that the record be returned to the court not later than 14 October 2022 for completion of appellate review. *United States v. Romero-Alegria*, No. ACM 40199, 2022 CCA LEXIS 558 (A.F. Ct. Crim. App. 22 Sep. 2022) (order).

The corrected record was re-docketed with this court on 14 October 2022. Thereafter, Appellant requested and received two additional enlargements of time before submitting his assignments of error on 24 February 2023. On 13 March 2023, this court granted the Government's motion to compel a declaration from Maj IJ responsive to Appellant's claim of ineffective assistance of counsel, and extended the deadline for the Government's answer brief until 19 April 2023. The Government timely filed its answer brief on 19 April 2023, and Appellant submitted his reply to the Government's answer on 4 May 2023.

On 24 May 2023, Appellant filed with this court a "demand for speedy appellate review," noting that he was still in confinement and awaiting a decision on his appeal.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *Id.* at 142. Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We review de novo an appellant's entitlement to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

Over 18 months have elapsed since Appellant's record of trial was originally docketed with this court. Assuming for purposes of our analysis that the

September 2021 remand and October 2021 re-docketing of the record did not "reset" the *Moreno* timeline, there is a facially unreasonable delay in the appellate proceedings. Accordingly, we have considered the *Barker* factors and find no violation of Appellant's due process rights. Appellant has not specifically alleged cognizable prejudice, and we find none. In particular, although Appellant asserted he remained in military confinement as of 24 May 2023, we have found no material prejudice to Appellant's substantial rights and affirm his sentence. Thus we find his confinement has not been "oppressive" for purposes of our *Moreno* analysis. Furthermore, we find the delays involved in Appellant's case have not been so egregious as to adversely affect the perception of the military justice system. Other than a relatively brief remand of approximately three weeks to ensure a complete record, and a brief delay to enable Maj IJ and the Government to respond to Appellant's claim of ineffective assistance, the delays are largely the result of Appellant's requests for enlargements of time. Accordingly, we find no violation of Appellant's due process rights. Furthermore, recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *Gay*, 74 M.J. at 742, we conclude no such relief is warranted.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).[9]

---

[9] We note Maj IJ's clemency memorandum, on behalf of Appellant, to the convening authority contains a misstatement regarding the scope of the convening authority's ability to grant sentence relief pursuant to R.C.M. 1109. Specifically, Maj IJ's memorandum states, "[T]he [c]onvening [a]uthority likely does not have the authority to reduce or suspend any portion of the sentence." This is inaccurate. The convening authority could reduce, commute, or suspend, in whole or in part, Appellant's reprimand, adjudged forfeitures, or reduction in grade. *See* R.C.M. 1109(c)(5). However, Appellant has not raised this misstatement as an assignment of error nor asserted he was prejudiced by it. Despite the foregoing statement, Maj IJ nevertheless requested the convening authority "consider any possible relief in clemency" on Appellant's behalf. Appellant's own clemency memorandum, although acknowledging the convening authority's power was "limited," nevertheless requested "any possible relief." We further note the convening authority's decision on action memorandum states the convening authority consulted with his staff judge advocate before making his decision on action, and we presume he received accurate advice on the scope of his authority in the absence of evidence to the contrary. *See United States v. Ayers*, 54 M.J. 85, 91 (C.A.A.F.

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

2000) ("An official document . . . is entitled to a presumption of regularity if it appears regular on its face."). Accordingly, we find no material prejudice to Appellant's substantial rights and no corrective action is required. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a).